S96A1119. BACON v. THE STATE.
S96A1121. PRYOR v. THE STATE.
S96A1122. JILES v. THE STATE.
(477 SE2d 122)

SEARS, Justice.

The appellants, Terry Bacon, Michnichello Anthony Pryor, and Jack Winfield Jiles, Jr., were jointly tried and convicted for the malice murder and kidnapping of James Pickett.[1] On appeal, all three

---

[1] The crimes occurred on the night of June 27-28, 1991. Bacon, Pryor, and Jiles were

appellants contend that the evidence is insufficient to support their convictions. In addition, Pryor and Jiles contend their constitutional right to confrontation was violated by the prosecutor during closing argument. In this regard, the state introduced into evidence at trial a statement given by Bacon to police in which Bacon placed responsibility for the crimes on Jiles and Pryor. When the statement was read to the jury, Pryor's and Jiles's names were redacted, and the letters A and B substituted for their names respectively. In closing argument, however, the prosecutor argued to the jury that A and B were Pryor and Jiles. Pryor and Jiles contend that this argument violated their right to confrontation. We conclude that the evidence is sufficient to support Bacon's convictions, but that it is insufficient to convict Pryor and Jiles. Accordingly, we do not reach Pryor's and Jiles's contention that their right to confrontation was violated.

On June 28, 1991, a body was found in a wooded area near the Chatham County line in Effingham County. The victim was later identified as James Pickett. Pickett had suffered burns and died as a result of severe head trauma caused by a blunt instrument.

At the time of the crime, Bacon was dating Tracy Passmore, Pickett's step-daughter. Bacon lived in Savannah, Georgia, with Passmore and the victim's wife. The victim, however, did not live with them. Passmore testified that on the night of June 27, 1991, she worked until about 10:30 p.m. After arriving home, she explained that she and Bacon were in the house when they heard a noise on the front porch. They looked out the window, and saw Pickett. Passmore testified that Bacon stated that "[t]here he go right now," and that Bacon then ran outside, picked up a board, and chased Pickett around the corner. Passmore added that Bacon was mad and that she was afraid of what he would do to Pickett, and that she therefore left her house and went to a neighbor's house. Passmore stated that she returned home after her mother returned home from work, sometime after 1:00 a.m. She added that Bacon did not return home until 5:00 or 6:00 a.m. Passmore also testified that Bacon had bought a brown Buick LeSabre about two to two and one-half weeks before the crime, and that he always kept the keys with him. Passmore stated that she

indicted on April 20, 1992. The defendants were jointly tried on September 1-4, 1992. The jury returned its guilty verdicts on September 4, and the court sentenced the defendants that same day. Bacon received concurrent life sentences for murder and kidnapping, and Pryor and Jiles received consecutive life sentences for those crimes. Bacon and Pryor filed motions for new trial on October 1, 1992, and Jiles filed a motion for new trial on October 5, 1992. The court reporter certified the trial transcript on September 29, 1993. Pryor amended his motion for new trial on June 23, 1994, and the trial court denied the three motions for new trial on February 29, 1996. Bacon, Pryor, and Jiles filed their notices of appeal on March 22, 1996, March 26, 1996, and March 27, 1996, respectively. The appeals were all docketed in this Court on April 8, 1996, and were all submitted for decision on briefs on June 3, 1996.

did not see Jiles or Pryor that night. According to Passmore, someone burglarized her room about two months before Pickett's death. She testified that she thought it was Pickett, and that Bacon could have been angry with Pickett for that reason. Further, in response to a question by defense counsel as to whether Bacon had "any other friends that you know of who are men besides these two gentlemen seated here? Does he have any other friends that he hangs around with," Passmore answered, "[n]o." Defense counsel then stated, "[h]e don't hang around with anybody?" Passmore answered that "Terry always to hisself," "[h]e always quiet and be by himself."

Lisa Jackson, a neighbor of Tracy Passmore and Terry Bacon, testified that on the night of June 27 she was sitting on a front porch talking with a friend between midnight and 1:00 a.m. She stated that a red car drove up and dropped Jiles off, and that she then saw him talking with Pryor. Shortly thereafter, Jackson saw Pickett walk down the street. She then saw Bacon run after Pickett and throw a board at him. According to Jackson, as Bacon ran by Jiles and Pryor, Bacon called to Jiles and Pryor to help him, but that they did not. According to Jackson, Bacon then went in his house and slammed the door. Jiles and Pryor then left, walking toward a different street than the one toward which Bacon had chased Pickett. Jackson subsequently saw Bacon leave his house and drive off in a large, four door, beige or tan car toward a different street than the one toward which Pryor and Jiles had walked. She did not see Bacon, Pryor, or Jiles after that. Jackson also testified that when Pryor found out that she had given police his name that he got mad and told her, "[d]on't be telling the detectives my damn name or nothing like that, because I ain't got a damn thing to do with that."

Detective Dailey of the Effingham County Sheriff's Department testified that four different types of footprints were found at the scene of the murder in Effingham County, only one of which matched the victim's shoes. As for the footprints that did not match the victim's shoes, there was no evidence that they matched any shoes worn by the three defendants. The state also offered forensic evidence that the tire tracks at the crime scene were similar in size, wear, and tread design to tire impressions made of the tires on the Buick that Passmore testified belonged to Bacon. Further, evidence was admitted that a tree at the crime scene near the footprints appeared to be damaged by a car, and that Bacon's car had damage on the bumper that could have been caused by the tree. Additionally, the state also presented evidence that blood stains found in Bacon's car matched the blood type of the victim and of Jiles.

Neither Bacon, nor Jiles, nor Pryor testified at trial, but they all made pre-trial statements to police that were introduced into evidence at trial. Bacon, in fact, made several pre-trial statements,

which Detective Dailey recounted at trial. Detective Dailey testified that when he first saw Bacon several days after the crime that Bacon initially denied who he was, and then stated that he had not seen the victim for three weeks. After he was told that Tracy Passmore had stated that the victim had been to their house on the night he disappeared, Bacon stated that the victim had been there, but that his (Bacon's) mind had been slipping. Bacon subsequently admitted that he had chased Pickett down a Savannah street near where he lived with Tracy and her mother, but that the board did not hit Pickett and that he (Bacon) did not pursue the matter. He stated that he went to his brother's house for a while and then came back to Tracy's house and spent the evening with her.

Detective Dailey later took another statement from Bacon in which Bacon placed responsibility for the crimes on Jiles and Pryor. When Detective Dailey read the statement to the jury, Pryor's and Jiles's names were redacted, and the letters A and B substituted for their names respectively. Bacon began by denying that he had chased Pickett and thrown a board at him. Bacon stated that he and A (Pryor) and B (Jiles) were riding in a car, with B driving, A in the passenger seat, and Bacon in the back seat. Bacon stated that A and B chased Pickett, caught him, beat him, and put him in the trunk of the car. They then drove Pickett to the country where A and B beat him up, poured gasoline on him, and burned him. Bacon stated that he stayed in the car during the incident. According to Bacon, B was driving a brown Buick belonging to Tracy Passmore. Bacon denied that he owned the car. After describing how A and B killed Pickett, one of the interviewing officers asked Bacon about his earlier statement in which he stated that he had chased Pickett and thrown a board at him. Bacon then admitted that he had done so, and that he did it because Pickett was "looking around" his house. Bacon stated that he went back in the house; that A and B walked up to the house; and that B took the keys to the car from him. Bacon stated A and B said they were going to beat Pickett because they wanted to get a "bad" reputation. Later in the statement, Bacon stated that he had actually been in the front passenger seat, and A had been riding in the back seat.

Pryor told the police that on the night of the murder he saw Bacon (in the statement read to the jury, Bacon's name was redacted and the letter A was substituted) chasing Pickett with a board and that Bacon yelled to him to stop Pickett, explaining that Pickett had broken into his house and taken a T.V. Pryor declined to stop Pickett or get involved. Pryor added that about an hour later, Bacon drove up to him and asked him if he had seen Pickett. Pryor stated that Jiles (identified as B in the statement) was in the car with Bacon. Pryor stated that he had not seen Pickett, and that Bacon then asked him

to get in the car and help find Pickett. Pryor stated that he did not do so. According to Pryor, Bacon and Jiles came back about 20 minutes later and again asked him if he had seen Pickett. Pryor answered that he had not, and he stated that Bacon and Jiles then drove off and did not return. Pryor indicated that he had more information about the murder, but he refused to tell police that information. He also stated that he had ridden in Bacon's car when two of Bacon's girl friends had given him a ride to the mall, and that his fingerprints could be in the car. Police arrested Pryor several months after Pryor made the foregoing statement, and at the time of arrest, Pryor told the arresting officer that, "you don't have shit on me."

Jiles also gave a statement to police in which he stated that, on the night of the murder, he cut his uncle's lawn and finished about 9:00 p.m., and went home and stayed there the rest of the night. Jiles stated that he had not been in the neighborhood where Bacon and Passmore live since June 25 because he had been busy working at Taylor Furniture Company in Savannah. A record keeper for Taylor Furniture, however, testified that Jiles had only worked three days during June and July — July 8, 9, and 11.

1. Bacon, Pryor, and Jiles all contest the sufficiency of the evidence to support their convictions. Initially, we must address the proper consideration that may be given to Bacon's statement in evaluating the sufficiency of the evidence to convict Pryor and Jiles and to Pryor's statement in evaluating the sufficiency of the evidence to convict Bacon and Jiles.[2] In this regard, Pryor and Jiles contend, alternately, that the evidence is insufficient to corroborate the testimony or confession of their accomplice, Bacon. These contentions, however, miss the mark. Because Bacon did not testify, his statement is inadmissible hearsay as to Pryor and Jiles, and may not be used whatsoever to support their convictions.[3] Similarly, Pryor's statement may not be used to support the convictions of Bacon or Jiles.

---

[2] Although Jiles also gave a statement, it did not incriminate Bacon or Pryor, and we thus need not be concerned with its admissibility against them.

[3] *Richardson v. Marsh*, 481 U. S. 200, 206-208 (107 SC 1702, 95 LE2d 176) (1987) ("where two defendants are tried jointly, the pretrial confession of one cannot be admitted *against the other* unless the confessing defendant takes the stand"). The confession of a defendant can be introduced *against that defendant* at a joint trial with another co-defendant if the trial court instructs the jury to consider the statement against only the confessing defendant and certain precautions are taken as needed, such as redacting the names of the non-confessing defendant, so as not to violate the non-confessing defendant's right to confrontation. Id. However, even if the confession of one defendant is properly admitted against that defendant pursuant to these guidelines, the confession may not in any event be used to support the conviction of the non-confessing defendant or defendants. Id.

### S96A1119. Bacon v. The State.

2. Contrary to Bacon's only contention, we conclude that the evidence was sufficient for a rational trier of fact to find him guilty of murder and kidnapping beyond a reasonable doubt. Construing the evidence in the light most favorable to the verdict, it was sufficient to establish that he had a motive for the crime and was angry with Pickett; that he was the person who initiated the assault on Pickett that eventually led to his murder; that he sought assistance with the assault; that his car was used to transport the victim; and that he told several inconsistent stories regarding his involvement in the crimes. Given this evidence, a rational trier of fact would have been authorized to conclude that Bacon in fact participated in the kidnapping and murder of Pickett and was not a mere bystander as he asserted in his statement to police. The evidence is sufficient to support Bacon's convictions for kidnapping and murder.[4]

### S96A1121. Pryor v. The State; S96A1122. Jiles v. The State.

3. Pryor and Jiles contend that the evidence is insufficient to convict them of murder and kidnapping. We agree.

Certain evidence does militate against Pryor and Jiles: they were both seen in the neighborhood of Bacon's initial assault against Pickett; their statements to police raise some suspicions and inconsistencies (i.e., Pryor stated that he had been in Bacon's car and that his fingerprints might be there, and Jiles stated that he had not been in the neighborhood of the initial assault on Pickett since June 25, when a witness saw him in the neighborhood on the night of the crime); there was evidence that three people other than the victim were at the scene of the murder; Jiles's blood type was consistent with the blood found in Bacon's car; Lisa Jackson testified that Pryor became angry with her after he learned that she had told police that she had seen him the evening that Pickett disappeared; and Passmore answered negatively when asked whether Bacon had any friends other than Pryor and Jiles.

We must also consider, however, that Pryor and Jiles specifically declined Bacon's invitation to join in the assault on Pickett in Savannah; that there was evidence that they walked toward a street different from the street toward which Bacon chased Pickett and different from the one toward which Bacon drove after chasing Pickett; that there was no forensic evidence placing Pryor or Jiles at the crime scene; and that they were never seen in Bacon's car.

Further, although blood consistent with Jiles's blood type was

---

[4] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

found in Bacon's car, Jiles's blood type was type B, present in about 15 percent of the population, and more significantly was the same as that of the victim, who was severely beaten and would have shed blood on his assailants, who then would likely have spread the blood to Bacon's car. Moreover, the victim was beaten with a blunt instrument, unlikely to draw blood from an assailant, and there was no evidence that Jiles suffered any injury on the night in question. Further, the state's DNA expert testified that his tests showed that Pickett's blood matched the blood found in Bacon's car, but that, with regard to Jiles, his tests could neither confirm nor exclude a match. For these reasons, the most reasonable hypothesis is that the blood found in Bacon's car was that of the victim and not that of Jiles.

Finally, although Passmore did respond negatively to a question regarding whether Bacon had any friends other than Pryor and Jiles, she did not state affirmatively that Pryor and Jiles "hung around" with Bacon, and in fact testified affirmatively that Bacon was always by himself.

Viewing this evidence in the light most favorable to the verdict, we conclude that it would not have authorized a rational trier of fact to find beyond a reasonable doubt that Pryor and Jiles kidnapped and murdered Pickett. Although we have great trust in the juries of this state, our constitutional duty[5] is to review the sufficiency of the evidence to support a conviction, and, where the evidence commands, to reverse. Accordingly, we reverse the convictions of Pryor and Jiles based upon the insufficiency of the evidence.

*Judgment affirmed in Case No. S96A1119; reversed in Case Nos. S96A1121 and S96A1122. All the Justices concur.*

DECIDED NOVEMBER 4, 1996 —
RECONSIDERATION DENIED NOVEMBER 22, 1996.

*Thompson, Price & Dozier, Ronald K. Thompson,* for appellant (case no. S96A1119).

*Gene Geary,* for appellant (case no. S96A1121).

*Turner & Pool, John R. Turner,* for appellant (case no. S96A1122).

*R. J. Martin III, District Attorney, Richard A. Mallard, Assistant District Attorney, Michael J. Bowers, Attorney General, Caroline W. Donaldson, Assistant Attorney General,* for appellee.

---

[5] See *Jackson v. Virginia,* 443 U. S. 307.