## S97A0353. LIVINGSTON v. THE STATE.
(486 SE2d 845)

BENHAM, Chief Justice.

After hearing evidence concerning the circumstances surrounding the death of Keith Evans, a jury concluded that appellant Howard Kelley Livingston was guilty of malice murder, kidnapping with bodily injury, motor vehicle theft by taking, arson, concealing a death, possession of a firearm during the commission of a felony, and influencing a witness.[1]

---

[1] The crimes occurred on April 13, 1991. The State initially sought imposition of the death penalty, and this Court conducted an interim review of this case and the cases against his co-indictees, rendering a decision on June 27, 1994. *Livingston v. State,* 264 Ga. 402 (444 SE2d 748) (1994). Thereafter, the State withdrew its notice of intent to seek the death penalty in appellant's case. Appellant's trial commenced on September 11, 1995, after both his co-indictees had been tried separately and convicted, and concluded with the jury's return of guilty verdicts on all counts on October 11, 1995. That same day, the trial court imposed consecutive life imprisonment sentences for the murder and kidnapping convictions, and

1. The State prosecuted separately three individuals, one of them being appellant, for the crimes. Appellant's brother-in-law, Tommy Lee Waldrip, was found guilty and sentenced to death in October 1994. *Waldrip v. State*, 267 Ga. 739 (482 SE2d 299) (1997). Tommy's son, John Mark Waldrip, was convicted and sentenced to multiple life terms of imprisonment in May 1995. *Waldrip v. State*, 266 Ga. 874 (471 SE2d 857) (1996). After they were convicted and sentenced and while their motions for new trial were pending, the Waldrips were called by the State to testify against appellant Livingston. In a proceeding outside the presence of the jury, each Waldrip invoked his privilege against self-incrimination and declined to testify. The trial court then signed an order on the State's motion pursuant to OCGA § 24-9-28, granting each Waldrip immunity from having his testimony used against him. Each man continued to remain silent despite being threatened with a contempt citation, and each was held in contempt and returned to his jail cell. In lieu of testimony from the Waldrips, the State presented to the jury evidence of the Waldrips' statements through the testimony of law enforcement authorities. The trial court deemed some of the statements admissible under the co-conspirator exception to the hearsay rule (OCGA § 24-3-5), and the remainder admissible under the "necessity" exception to the hearsay rule. OCGA § 24-3-1 (b). Appellant contends that the evidence against him, excluding the hearsay testimony recounting the Waldrips' statements which he contends was erroneously admitted, is insufficient to authorize a rational trier of fact to find he is guilty beyond a reasonable doubt of the offenses for which he was convicted.

The victim's burning truck was found just off a Dawson County highway in the early morning hours of April 14, 1991, the day before the victim was scheduled to give eyewitness testimony in the retrial of an armed robbery charge pending against John Mark Waldrip. The victim's body, shot and bludgeoned, was discovered in a shallow grave in Gilmer County four days later. The State established that the victim had last been seen as he left his place of employment at 10:30 p.m. on April 13, and that his unoccupied burning truck was found approximately 100 minutes later near the Dawson/Gilmer county line. Near the burning truck, authorities also found a current automobile insurance card evidencing coverage for a 1988 Ford Tempo, which card was issued to Linda Waldrip, the wife of Tommy

---

terms of years for the other convictions, all to be served consecutively to the two life imprisonment sentences and to each other. Appellant's motion for new trial, filed November 8, 1995, and amended March 27, 1996, was denied on October 14, 1996. The Notice of Appeal was filed on November 12, 1996, and the case was docketed in this Court on November 21. Oral argument was heard on February 11, 1997.

Waldrip, the mother of John Mark, and appellant's half-sister.

Armed with the insurance card issued for the Waldrip automobile and with the knowledge that the missing victim was scheduled to testify the next day against John Mark, law enforcement officers visited the Waldrips' apartment. Tommy told authorities he had left his Dawsonville home around 9:00 p.m. to take appellant to Gainesville and had returned home at 11:00 p.m.[2] Appellant's mother confirmed that Tommy had left with appellant from her Dawsonville home between 9:15 and 9:30 p.m. John Mark told investigators that he had returned home at 10:45 p.m. after spending the evening with friends at a pool hall.[3] When John Mark's alibi was not corroborated and it was learned that he had contacted another witness scheduled to identify John Mark as the armed robber at trial, John Mark was arrested for violating a condition of his release on bond. Tommy was also arrested. On April 18, Tommy told a GBI agent that he, John Mark, and appellant had been together in the Ford Tempo when they saw the victim in his truck at 10:45 p.m.; that John Mark exited the car after which Tommy and appellant pursued the victim and ran him off the road; that Tommy shot the victim twice with a 20-gauge shotgun and struck him about 25 times with a blackjack; and that appellant hit the victim several times. According to Tommy, the duo put the victim back in his truck, drove it and the Ford Tempo to Gilmer County where they buried the body, and then drove the vehicles to another site where they burned the truck and the clothes they were wearing. After driving appellant home to Gainesville, Tommy returned to his Dawsonville apartment.[4] After giving this statement, Tommy then led law enforcement personnel to the gravesite, and the victim's body was recovered. That same day, appellant told law enforcement authorities that Tommy had given him a ride to his mother's house in Dawsonville and back to Gainesville. He told the officers, "I got a ride from the wrong person."

That evening, the GBI agent visited John Mark, who was incarcerated in the Forsyth County Detention Center. John Mark informed the agent that he did not wish to make a statement until he spoke with his father and his four-year-old daughter. When John Mark called his daughter, in the presence of the GBI agent he told the person who answered the phone that it was over, that the victim's body had been found.[5] The agent then took John Mark to the

---

[2] This statement was admitted pursuant to the co-conspirator exception to the hearsay rule.

[3] This statement was admitted pursuant to the co-conspirator exception to the hearsay rule.

[4] This statement was admitted pursuant to the necessity exception to the hearsay rule.

[5] This statement was admitted pursuant to the necessity exception to the hearsay rule.

Dawson County Detention Center where Tommy was being held. After meeting with his father, John Mark told the agent that he and his father had been driving appellant from Dawsonville to Gainesville when his father told John Mark to get out of the car. John Mark stated that he did not see the victim.[6]

The next day (April 19), the GBI agent revisited Tommy, who gave another statement in which he said that he had stopped the Ford Tempo in the middle of the road, thereby forcing the victim to stop his truck. John Mark, armed with the shotgun, had approached the victim's truck to speak with him, and had shot him when he saw him reach for something. John Mark had then driven the victim's truck, with his father and appellant following in the Ford Tempo, to a site where he shot the victim again and hit him with a wooden stick. In this statement, Tommy stated that appellant had thrown the victim on the ground.[7] The GBI agent then went to see John Mark, and played for him a tape recording of the interview he had just conducted with Tommy. John Mark said, "If my daddy says I shot [the victim], then I guess I did."[8]

The State also presented evidence establishing that during the evening the victim disappeared, John Mark, in the presence of Tommy, had telephoned the other witness against him in the armed robbery trial to discourage him from testifying. There was evidence that, during the afternoon of the day the victim disappeared, appellant had been with Tommy and John Mark when Tommy purchased a used car and returned it shortly thereafter due to mechanical problems, and that appellant had left his mother's Dawsonville home with Tommy after 9:00 p.m. that evening. Because of the distance between Dawsonville and appellant's Gainesville home, the State suggested that Tommy could not have driven appellant to Gainesville and returned in time to waylay the victim as he left his job, leading to the inference that appellant was with Tommy when he encountered the victim. The site where the victim was assaulted contained shoeprints left by three different sets of shoes, and cigarette butts of the brand, but not the type, that appellant smoked were found there.[9] Telephone records showed three phone calls were placed between the Waldrips' apartment and appellant's residence or a nearby pay phone the evening after the victim disappeared. Appellant told investigators that he got a ride "with the wrong person." Appellant's cellmate testified that, while incarcerated, appellant warned him, "You don't

---

[6] This statement was admitted pursuant to the necessity exception to the hearsay rule.
[7] This statement was admitted pursuant to the necessity exception to the hearsay rule.
[8] This statement was admitted pursuant to the necessity exception to the hearsay rule.
[9] In his April 18 statement, Tommy said he had smoked the cigarettes.

want to f__ with me, I'll f__ with you like we f___ that other son of a bitch up."

It is clear that the evidence which most clearly implicates appellant in the crimes for which he was convicted is the hearsay testimony of law enforcement officers repeating the co-indictees' out-of-court statements after the co-indictees refused to testify. As a result of the trial court's admission of the unsworn out-of-court statements of the non-testifying co-indictees, appellant contends he was unable to confront the witnesses against him and cross-examine them, a right secured by the Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment. *Pointer v. Texas*, 380 U. S. 400 (85 SC 1065, 13 LE2d 923) (1965). Appellant maintains that the admission of the co-indictees' hearsay statements was error because the statutory prerequisites for admission of co-conspirators' statements were not met (OCGA § 24-3-5), and the statutory prohibitions against the admission of co-conspirators' confessions were violated. See OCGA § 24-3-52. In order to determine whether the evidence was sufficient to authorize appellant's convictions, we must determine whether the hearsay testimony was properly admitted since, being "wholly without probative value [and] . . . hav[ing] no weight in establishing the facts necessary to convict the defendant . . . ," erroneously-admitted hearsay may not be considered in reviewing the sufficiency of the evidence. *Duke v. State*, 205 Ga. 106 (hn. 1) (52 SE2d 455) (1949); *Johnson v. State*, 214 Ga. App. 77 (2) (447 SE2d 74) (1994); *Calhoun v. State*, 213 Ga. App. 375 (4) (a) (444 SE2d 405) (1994); *Reid v. State*, 212 Ga. App. 787, 788-789 (442 SE2d 852) (1994); *Wood v. State*, 204 Ga. App. 467 (1) (419 SE2d 534) (1992); *Curtis v. State*, 190 Ga. App. 173 (2) (378 SE2d 516) (1989); *Collins v. State*, 146 Ga. App. 857 (247 SE2d 602) (1978). See also *Bacon v. State*, 267 Ga. 325 (1) (477 SE2d 122) (1996) (confession of a non-testifying co-defendant was inadmissible hearsay and could not be used to support the convictions of his co-defendants). See also Rumsey, Agnor's Ga. Evid. (3rd ed.), § 11-3. We hereby disapprove the appellate holdings to the contrary in *Rosser v. State*, 211 Ga. App. 402 (2) (439 SE2d 72) (1993); and *Glisson v. State*, 192 Ga. App. 409, 410-411 (385 SE2d 4) (1989). In these cases, the Court of Appeals held that erroneously-admitted hearsay may be considered in determining whether sufficient evidence to support the verdict had been presented. We reiterate the observation made in *Hall v. State*, 244 Ga. 86 (5) (259 SE2d 41) (1979), where this Court pointed out that evidence found to be inadmissible hearsay on appeal but which could be made admissible at retrial by laying the proper foundation may be considered when examining whether the evidence was sufficient to authorize the guilty verdict. The hearsay testimony in the case at bar does not fall into that category and

therefore may not be considered.

2. It is undisputed that the testimony recounting the Waldrips' various statements is hearsay since it is evidence "which does not derive its value solely from the credit of the witness but rests mainly on the veracity and competency of other persons." OCGA § 24-3-1 (a). The admission of any hearsay testimony might be thought to be at odds with the literal terms of the Confrontation Clause of the Sixth Amendment ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . ."); however, a declarant's out-of-court statement may be admitted without violating a defendant's right of confrontation if the out-of-court statement meets the requirements of a firmly-rooted exception to the hearsay rule or, if not within the parameters of a firmly-rooted exception, if it were made under circumstances demonstrating particular guarantees of trustworthiness. *Barksdale v. State*, 265 Ga. 9, 13 (453 SE2d 2) (1995). Out-of-court statements which fall within a firmly-rooted hearsay exception are deemed to satisfy the constitutional requirement of reliability usually provided by a witness's oath-taking and subjection to cross-examination because such an exception is the result of judicial and legislative experience assessing the trustworthiness of that type of out-of-court statement. *Idaho v. Wright*, 497 U. S. 805, 816-817 (110 SC 3139, 111 LE2d 638) (1990).

3. One firmly-rooted exception to the hearsay rule authorizes the admission of statements made by co-conspirators during the course and in furtherance of the criminal project. See *Bourjaily v. United States*, 483 U. S. 171, 183 (107 SC 2775, 97 LE2d 144) (1987). Georgia law permits the admission of "declarations by any one of the conspirators during the pendency of the criminal project" against any co-conspirator "[a]fter the fact of conspiracy is proved." OCGA § 24-3-5. However, a co-conspirator's confession to police in which other alleged conspirators are identified and their participation is described is not made "during the pendency of the criminal project," and therefore is not admissible under OCGA § 24-3-5. *Crowder v. State*, 237 Ga. 141, 152 (227 SE2d 230) (1976). See also *Jones v. State*, 265 Ga. 84 (2) (453 SE2d 716) (1995). Only John Mark's and Tommy's initial statements to police (see footnotes 2 and 3, supra) were admitted pursuant to this exception. Any error in the admission of these two statements was harmless error since John Mark's statement did not mention, much less inculpate appellant, and Tommy's statement that he had been away from home between 9:00 p.m. and 11:00 p.m. giving appellant a ride to Gainesville was cumulative of the testimony of appellant's mother and of appellant's statement to police that Tommy had driven him to Gainesville. *Smith v. State*, 266 Ga. 827 (4) (470 SE2d 674) (1996).

4. The remainder of the Waldrips' statements was admitted into

evidence under the "necessity" exception to the rule against the admission of hearsay. That exception authorizes the admission of hearsay when the declarant is unavailable and there exists "a circumstantial guaranty of the trustworthiness of the offered evidence." *Higgs v. State*, 256 Ga. 606 (3) (351 SE2d 448) (1987). We have been unable to find, and the trial court expressed unfamiliarity with, case law authorizing use of the "necessity" exception to permit the out-of-court confession of a co-conspirator to be used as evidence against another co-conspirator. In all likelihood, the dearth of case law on the subject is because Georgia's public policy, embodied in OCGA § 24-3-52, authorizes use of a co-conspirator's confession only against the confessor.[10] OCGA § 24-3-52 was designed to protect a defendant from the hearsay confession of a co-conspirator who does not testify at trial. *Brown v. State*, 266 Ga. 633 (2) (469 SE2d 186) (1996). In *Price v. State*, 239 Ga. 439 (238 SE2d 24) (1977), this Court ruled that a police officer's testimony informing the jury of the contents of a co-conspirator's confession implicating Price as well as the confessor violated OCGA § 24-3-52 and was inadmissible. We recently ruled in *Bacon v. State*, supra, 267 Ga. at 329, that a co-defendant's statement to police implicating his two co-defendants was inadmissible hearsay as to the two co-defendants when the declarant did not testify. In so resolving the issue, we did not reach the co-defendants' contention that use of the statement of a non-testifying co-defendant which statement inculpated the other co-defendants violated their constitutional right to confront and cross-examine witnesses. However, in *Douglas v. Alabama*, 380 U. S. 415 (85 SC 1074, 13 LE2d 934) (1965), the U. S. Supreme Court ruled that a defendant's constitutional right of confrontation and cross-examination was violated when the defendant's co-indictee refused to testify against the defendant and the prosecuting attorney "cross-examined" the silent witness by reading from the witness's purported confession which implicated the defendant. The court observed that the opportunity to cross-examine the law enforcement officers to whom the statement purportedly had been made was not adequate to redress "this denial of the essential right secured by the Confrontation Clause" since their testimony would tend to show only that the statement had been made by the declarant. Id. at 420. Without the opportunity to cross-examine the declarant, the defendant was unable "to test the truth of the statement itself." Id. In *Price*, supra, this Court endorsed the U. S. Supreme Court's rationale by holding that the introduction of the co-conspirator's hearsay confession to show the defendant's involvement

---

[10] OCGA § 24-3-52 provides that "[t]he confession of one joint offender or conspirator made after the enterprise is ended shall be admissible only against himself."

in the crimes violated the defendant's constitutional right to confrontation. 239 Ga. at 442. See also *Barksdale v. State*, supra, 265 Ga. 9 (2) (b), where we determined that a non-testifying co-defendant's out-of-court statement to police while in custody cannot be held to have been made under circumstances showing particular guarantees of trustworthiness; and *Crawford v. State*, 203 Ga. App. 215 (2) (416 SE2d 820) (1992), where the Court of Appeals held that the admission of the taped confession of a co-indictee who refused to testify at the defendant's trial violated OCGA § 24-3-52 as well as the defendant's constitutional rights, and ruled that the "necessity" exception was not applicable where OCGA § 24-3-52 expressly prohibited the admission of the proffered evidence. In light of the authority summarized above, we must conclude that the hearsay testimony recounting the confessions of purported co-conspirators who did not testify was erroneously admitted in appellant's trial.

5. We next consider the sufficiency of the evidence against appellant without the inadmissible hearsay testimony, examining the evidence in a light most favorable to upholding the guilty verdicts. *Bacon v. State*, supra, 267 Ga. at 331. The State established that, the evening the victim disappeared, the Waldrips had successfully intimidated the other witness scheduled to testify against John Mark, that the Waldrips were involved in the victim's slaying, and that appellant left his mother's home with Tommy Waldrip 75 minutes before the victim was accosted. Appellant later told investigators that Tommy had given him a ride from Dawsonville to Gainesville, and that he had gotten a ride that evening "with the wrong person." An officer testified he had driven the round trip from Dawsonville to Gainesville and back, and found it to take approximately 90 minutes. The State established that the attackers left three sets of footprints at the site where the victim was assaulted, and cigarette butts of the brand smoked by appellant, albeit not the type. Telephone records showed that, the evening after the victim disappeared, three phone calls took place between the Waldrips' apartment and the communal telephone at appellant's boardinghouse, or a pay phone at a fast food restaurant near the boardinghouse. While incarcerated and awaiting trial, appellant responded to a cellmate who remarked that the law was designed to protect the innocent, "Well, I guess my ass is just in the electric chair, then." The inmate also testified that appellant warned him, "You don't want to f___ with me, I'll f___ with you like we f___ that other son of a bitch up." With this evidence before it, a rational trier of fact could find appellant guilty of the crimes charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

6. In light of our disposition of appellant's first and third enumerations of error, his contention that the State failed to disclose

exculpatory evidence under *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963) concerning the possible participation of another Waldrip son in the murder of the victim is moot given defense counsel's current knowledge of the evidence the State allegedly failed to disclose. *Dinning v. State*, 266 Ga. 694 (3) (470 SE2d 431) (1996).

*Judgment reversed. All the Justices concur.*

DECIDED JULY 14, 1997.

*Valpey & Walker, Harold M. Walker, Jr., Michael Mears, James C. Bonner, Jr.,* for appellant.

*Lydia J. Sartain, District Attorney, Lee Darragh, Assistant District Attorney, Thurbert E. Baker, Attorney General, Angelica M. Woo, Assistant Attorney General,* for appellee.