## A00A1266. AVERY v. THE STATE.
### (534 SE2d 897)

ELDRIDGE, Judge.

Quinton Avery was convicted by a jury of the offenses of aggravated assault, violation of OCGA § 16-11-106, and armed robbery. Avery appeals from the denial of his motion for new trial. Without challenging the sufficiency of the evidence, Avery raises four enumerations of error.

At trial, the evidence showed the following. On March 22, 1995, Elijah Lofton was visiting relatives in Bowen Homes. Lofton left his relatives' home between 10:30 and 11:00 p.m. As he was walking to his car, Lofton was approached by Avery and Spencer Compton Fluellen ("Compton"). Lofton testified that the area was well lit and that he recognized both men. Lofton further testified that he had known both men for at least eight to ten years. When the two men were three to five feet from him, Lofton testified that he noticed that Avery was carrying a semiautomatic handgun. Lofton testified that he asked the two men, "What's up?" As Lofton turned to face Compton, Avery raised the gun and pointed it at Lofton's left leg and fired a shot. The bullet shattered Lofton's leg just above his left knee. After being shot, Lofton was standing on his right leg. Lofton testified that Compton circled behind him and "tripped his good leg" causing him to fall.

Avery demanded that Lofton, "Give it up." In response to Avery's demand, Lofton threw $200 cash, his gold necklace, and his car keys in the direction of Avery and Compton. Both men picked up the items. Lofton testified that Avery then stated, "Oh, boy, you know you got to go, you know[,] you know me, I know you." Avery placed

---

the gun to Lofton's head. A neighbor who had witnessed the event shouted, "No Fat, . . . don't do it," and Avery and Compton took off running.

1. Avery argues that the trial court erred in allowing the introduction of similar transaction evidence. We disagree.

Before evidence of an independent offense or act may be admitted into evidence, the State must make three affirmative showings: First, the State must demonstrate that it seeks to introduce such evidence for an appropriate purpose, such as illustrating the defendant's identity, intent, course of conduct, or bent of mind; second, the State must show sufficient evidence to establish that the accused committed the independent offense or act; and third, the State must demonstrate a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter. *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991). The trial court made such determination prior to trial after the prosecution made a proper showing.

> The law does not require that a similar transaction crime be identical to the crime charged. There can be a substantial variation of circumstances where there exists a logical connection between crimes which are essentially dissimilar. The issue of admissibility of extrinsic transactions has never been one of mere similarity. It is, rather, relevance to the issues in the trial of the case. The State may only have the burden of showing a *logical connection* between crimes which are essentially dissimilar. When similar transaction evidence is being introduced to prove motive, intent, or bent of mind, it requires a lesser degree of similarity to meet the test of admissibility than when such evidence is being introduced to prove identity.

(Citation and punctuation omitted; emphasis in original.) *Maxey v. State*, 239 Ga. App. 638, 640-641 (3) (521 SE2d 673) (1999).

In this case, the State introduced the similar transaction evidence to show bent of mind, course of conduct, and modus operandi. The evidence relating to the similar transaction revealed that on December 12, 1995, the victim, Eric Harris, was driving through Bowen Homes and stopped to talk with a girl he knew. Harris testified that while he was standing on the street talking, he noticed Avery and several other men standing on a nearby wall. Harris further testified that he knew Avery and the other men, that they were friends, and that he had known Avery for about seven years. One of the men, Steve Beasley, came over and said to Harris that "Tony" was looking for him. Harris asked Beasley to tell Tony he would be

back shortly. When Harris made such statement, the girl shook her head no.

Harris returned about five or ten minutes later, and Tony was standing on the street. Harris spoke with Tony shortly before Tony was called into his house. Harris told Avery and the other men to tell Tony he would be back. As he turned around, Harris was shot from behind in his left thigh by Irvin Brown. As Harris turned around, he saw Avery coming across the street. Pursuant to Brown's demand, Harris gave him everything in his pockets, including the keys to his truck. Avery took the truck keys from Brown. All of the men who were standing nearby left in Harris' truck, with Avery driving.

The decision to admit prior similar transaction evidence is within the discretion of the trial court and will not be disturbed absent an abuse of discretion. *Brooks v. State*, 230 Ga. App. 846 (1) (498 SE2d 139) (1998). In both the present case and the similar transaction, both incidents occurred in Bowen Homes; both incidents involved an assault and robbery; both victims were acquaintances of Avery; both victims were shot in the left leg and robbed; and in both cases the person who shot the victim worked with an accomplice. Under these circumstances, we find the evidence of similarity sufficient. Accordingly, as there was compliance with *Williams v. State*, supra at 642, and *Stephens v. State*, 261 Ga. 467, 468-469 (405 SE2d 483) (1991), the trial court did not abuse its discretion in admitting the similar transaction evidence.

2. Avery asserts that his trial counsel was ineffective because during jury selection he mistakenly struck the wrong juror. At trial, Avery's counsel made an objection to the jury as selected and requested a mistrial, both of which were denied by the court.

On September 13, 1996, Avery's trial counsel filed a motion for new trial which did not assert ineffective assistance of counsel as a ground. Subsequently, Avery's trial counsel made a motion to withdraw, stating that there were issues of ineffective assistance of counsel which needed to be raised. On January 5, 1998, trial counsel was allowed to withdraw, and, on January 16, 1998, Avery was appointed new counsel. While an amended motion for new trial was not filed prior to the court's May 13, 1999 order denying the motion for new trial, the order stated that the trial court considered Avery's ineffective assistance of counsel claim. However, the specific grounds which Avery had contended were the basis for his ineffective assistance of counsel claim were not included in that order. Further, the record does not include a transcript of the motion for new trial hearing, and this Court's inquiry with the clerk of the trial court revealed that a transcript of the hearing on Avery's motion for new trial was not a part of the trial court's record.

Our Supreme Court has stated that an ineffective assistance of trial counsel claim must be raised at the first practicable moment. *Bailey v. State*, 264 Ga. 300 (443 SE2d 836) (1991). The Court has further held that a claim of ineffective counsel must be raised before appeal if an opportunity to do so is available. *Glover v. State*, 266 Ga. 183, 184 (2) (465 SE2d 659) (1996). If the opportunity to present such a claim was available, "the failure to seize that opportunity is a procedural bar to raising that issue at a later time." Id.

*Wilcox v. State*, 236 Ga. App. 235, 239 (511 SE2d 597) (1999).

Here, Avery had an opportunity to raise any ineffective assistance of counsel claims at the trial level and did so. However, his failure to amend his motion for new trial or provide this Court with a transcript precludes this Court from making a determination of whether the ground now asserted by Avery was raised at the first opportunity to present such issue, i.e., the trial level. Hence, Avery's claim is waived.[1]

3. Avery alleges that the trial court erred in denying his motion for mistrial. Avery filed a motion in limine requesting that the trial court prohibit any reference to Avery's legal name of Quinton Wallace or any other aliases and to require that Avery be referred to exclusively by the name under which defendant was indicted, which was Quinton Avery. Prior to trial, the State agreed to refer to the defendant only as Quinton Avery.[2]

During the direct testimony of State's witness Investigator C. L. White, the following colloquy took place:

Q: Were you able to locate Fat and Spencer?
A: Not Fat and Spencer. I located Mr. Quinton Wallace at the time.
Ms. Hall: Objection, your honor, at this time.
The Court: Objection sustained.
Ms. Hall: And we do have a motion.
Ms. Miller-Terry: Well, the person you located, what was his name?
The defendant [sic]: The name given to me was Quinton Wallace.

At this point, counsel for Avery made a motion for mistrial on the

---

[1] Allegations of ineffective assistance of counsel which are raised on appeal that differ from those raised before the trial court are waived. *Hayes v. State*, 262 Ga. 881, 882 (2) (426 SE2d 886) (1993); *Beecher v. State*, 240 Ga. App. 457 (523 SE2d 54) (1999).

[2] Avery signed his name on the indictment pleading not guilty as Quinton Wallace, not Quinton Avery, the name under which he was indicted.

grounds that the testimony of the witness referring to Avery's name placed his character in evidence.

"Testimony as to the use of an alias does not place the character of an accused in issue. *McClendon v. State*, [170 Ga. App. 790, 791 (2) (318 SE2d 145) (1984)]." *McCord v. State*, 268 Ga. 842, 843 (2) (493 SE2d 129) (1997). Hence, there was no abuse of discretion in the trial court's denial of Avery's request for a mistrial and curative instruction.

4. Avery's co-conspirator Compton testified at trial for the State. Compton testified that he had not been offered any "deal" by the State in exchange for his testimony. Originally, the trial court appointed counsel to represent Compton. However, at the time of Avery's trial, Compton had obtained private counsel. Avery sought to call Compton's first attorney to rebut Compton's testimony that he had not been offered a "deal" by the State. Avery's counsel contended that he had been informed by Compton's first attorney that the State had offered Compton a reduced sentence in exchange for his testimony at trial.

The State objected to the calling of such witness on two grounds. First, the State asserted that all negotiations made with Compton's first attorney were withdrawn. The prosecutor stated that because Compton's first attorney never indicated his client would accept the offered "deal" and would not allow the State to interview his client, she withdrew the offer and decided to call Compton as a witness without making any favorable offer. The State further asserted that, after Compton's testimony which alerted Avery to the possibility he would need to call Compton's first counsel, the State was not given timely notice of Avery's intentions to call such witness. Compton's first counsel's name had not been provided to the State prior to trial as a possible defense witness. After Compton's testimony, the State put two additional witnesses on the stand, and the defense put up its first witness. It was only after the defense's first witness that Avery's counsel mentioned the possibility she might want to call Compton's first attorney to rebut Compton's testimony. At such time, counsel for Avery asked for a recess until the next morning to locate a rebuttal witness but did not state the name of the witness. The name of the witness was not given until the trial court made inquiry.

The trial court denied Avery's request to call Compton's first counsel to testify and found that Avery, after learning of the need to call the witness during Compton's testimony, had not given the State timely notice of his intent to call such witness. Avery was allowed to put Compton's first attorney on the stand and make a proffer of the excluded evidence. Compton's first counsel testified that, in exchange for Compton's testimony at trial, the prosecutor offered to recommend that the charges against Compton be reduced to robbery and

that Compton be sentenced to five years, to serve three, the balance to be served on probation; that he communicated such offer to Compton; that Compton refused the offer; and that no "deal" was ever made.

Without deciding whether Avery gave timely notice of his intent to call Compton's first counsel, we find that the testimony that Avery sought to elicit is barred because it comes within the attorney-client privilege. "Under the common law of Georgia, as codified in OCGA §§ 24-9-21 (2), 24-9-24, and 24-9-25, the attorney-client privilege bars revelation, discovery, and *testimony* of a lawyer except when waived by the client or in very limited circumstances." (Citation and punctuation omitted; emphasis supplied.) *NationsBank, N.A. v. SouthTrust Bank &c.*, 226 Ga. App. 888, 896 (487 SE2d 701) (1997). Here, the testimony that Avery seeks to put into evidence, i.e., that Compton's first lawyer communicated the State's offer to Compton and that Compton refused such offer, clearly falls within the attorney-client privilege. "It is axiomatic that the attorney-client privilege belongs to the client, not the attorney." (Citations and punctuation omitted.) *Osborn v. State*, 233 Ga. App. 257, 260 (504 SE2d 74) (1998). "Therefore, the attorney-client privilege can be waived [only] by the client. [Cit.]" Id. There is no evidence that Compton waived this privilege. Further, while the attorney-client privilege can be waived when communications are made to an attorney with the intention of having this communication imparted to the opposite party, there is no evidence that Compton intended for his attorney to communicate to the State his refusal of the State's offer. *Moclaire v. State,* 215 Ga. App. 360, 363 (451 SE2d 68) (1994). "The mere fact that the attorney discussed the communications with others, without evidence that [Compton] authorized those discussions, does not prove that [Compton] waived the attorney-client privilege." Id.

Moreover, even if the trial court erred in excluding the testimony of the witness, such error would be harmless beyond a reasonable doubt because there was overwhelming evidence of Avery's guilt. The victim and an eyewitness positively identified Avery as the individual who shot and robbed the victim. See *Byrd v. State*, 262 Ga. 426, 428 (420 SE2d 748) (1992); *Massaline v. State*, 234 Ga. App. 35 (506 SE2d 181) (1998).

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED MAY 24, 2000.

*Patrick G. Longhi,* for appellant.

*Paul L. Howard, Jr., District Attorney, Elizabeth A. Baker, Assistant District Attorney*, for appellee.