## A08A2436. DELOATCH v. THE STATE.
(673 SE2d 576)

MIKELL, Judge.

After a jury trial, Donald Jean Deloatch was convicted of aggravated assault and armed robbery.[1] On appeal, Deloatch argues that his Sixth Amendment right to confront witnesses was violated when the trial court permitted the testimony of an alleged co-defendant in two similar transactions. We agree and reverse.

"On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence."[2] So viewed, the evidence shows that on October 12, 2006, Cody Wilcox was employed as a clerk at a gas station in Coweta County. Wilcox testified that a man entered the store and asked for two packs of cigarettes, which Wilcox placed on the counter. As the man picked up other items in the store and Wilcox began to scan the items and place them in a bag, the man pointed a black semiautomatic pistol at him, demanding that he put the cash in the bag. Wilcox recalled that the man wore dirty khaki pants and a green, hooded sweatshirt. After Wilcox put the money into the bag, the man took the bag and left the store. Wilcox testified that he hit the panic button and called the police and that he thought the man left the scene on foot.

Lieutenant John Lewis of the Coweta County Sheriff's Office testified that he interviewed Wilcox on the day of the robbery and that Wilcox described the suspect as a black male who looked like he

---

[1] Deloatch's first trial resulted in a mistrial. This is his second trial on these charges.

[2] (Punctuation and footnote omitted.) *Grant-Farley v. State*, 292 Ga. App. 293, 294 (664 SE2d 302) (2008).

66

may have been homeless. As a part of his investigation, Wilcox tried to obtain fingerprints from all objects touched by the perpetrator and sent them to the Georgia Crime Lab, but the prints did not yield any identification information.

Lewis testified that while at the scene, he received a call from an officer with the Palmetto Police Department who identified Deloatch as an individual who was a suspect in similar crimes committed in that officer's jurisdiction. Lewis investigated Deloatch and compiled a photographic lineup based on Deloatch's picture. Wilcox selected Deloatch from the lineup and was sure that Deloatch was the robber. After Wilcox identified Deloatch, Lewis obtained a search warrant for Deloatch's home. Lewis testified that upon executing the warrant, the only item of evidentiary value that he found was a large quantity of mud-stained clothes, including dirty khaki pants.

1. Deloatch argues that the trial court erroneously allowed Thomas Drake to testify as a similar transaction witness to two separate robberies, which allegedly involved Deloatch. We agree. Moreover, because we cannot say that this constitutional error was harmless beyond a reasonable doubt, we must reverse Deloatch's convictions.

The state filed a notice that it intended to present evidence of two similar transactions, both of which involved Drake acting as an accomplice. When Drake was called to testify, he repeatedly invoked his right to remain silent when asked about the similar transactions. After the trial court informed him that the protections guaranteed by the Fifth Amendment did not apply to a crime for which he had already been convicted, Drake admitted that he was currently in prison in connection with his guilty plea to an armed robbery charge. However, Drake exercised his right to remain silent in response to every other question asked by the state as well as by defense counsel. During the state's examination, the following colloquy occurred:

Q. [D]id you have an interview that was audio recorded with investigator Callaghan from the Fulton County Police Department in December of last year?

A. I plead the fifth. . . .

Q. Did you make any allegations to investigator Callaghan during that interview about your involvement in Donald Deloatch's involvement in two armed robberies in Fulton County?

A. I plead the fifth.

Q. And didn't you tell investigator Callaghan in that interview that those two armed robberies were at this Blue-Eyed Daisy and also at the Corner Bottle Shop? . . .

A. I plead the fifth.

Q. And in your interview with investigator Callaghan did you not say that the armed robbery that occurred at the Blue-Eyed Daisy was Donald Deloatch's idea and that you didn't even know where the Blue-Eyed Daisy was? . . .

A. Plead the fifth. . . .

Q. And isn't it true in both of these instances — Well, in the Corner Bottle Shop that Donald Deloatch went in alone?

A. Plead the fifth.

Q. And isn't it true that you told investigator Callaghan in that interview that at the Blue-Eyed Daisy that you and Donald Deloatch entered that business and performed an armed robbery?

A. Plead the fifth. . . .

Q. How do you know Donald Deloatch?

A. Plead the fifth.

Q. Is it true that you worked with Donald Deloatch?

A. Plead the fifth. . . .

Q. Isn't it true that those two armed robberies that you were involved in were Donald Deloatch's idea?

A. Plead the fifth.

Deloatch argues that this exchange between the prosecutor and Drake violated his rights under the Confrontation Clause of the Sixth Amendment.

The right to confront the witnesses against a defendant and cross-examine them is secured by the Sixth Amendment to the United States Constitution and made applicable to the states through the Fourteenth Amendment.[3] The United States Supreme Court made the Confrontation Clause applicable to the states in *Douglas v. Alabama*.[4] In that case, after a co-defendant invoked the right against self-incrimination, the solicitor read into evidence his statement, which identified the defendant on trial as the perpetrator.[5] The solicitor paused after every few sentences to ask the co-defendant, "[d]id you make that statement?" Each time the co-defendant asserted the privilege and refused to answer.[6] The Supreme Court ruled that the defendant's "inability to cross-examine [the co-defendant] as to the alleged confession plainly

---

[3] *Livingston v. State*, 268 Ga. 205, 209 (1) (486 SE2d 845) (1997).

[4] 380 U. S. 415, 418 (I) (85 SC 1074, 13 LE2d 934) (1965).

[5] Id. at 416-417.

[6] Id.

YALE LAW LIBRARY

denied him the right of cross-examination secured by the Confrontation Clause."[7] The Court explained that although the reading of the statement and the ensuing refusals to answer

> were not technically testimony, the [s]olicitor's reading may well have been the equivalent in the jury's mind of testimony that [the co-defendant] in fact made the statement; and [the co-defendant's] reliance upon the privilege created a situation in which the jury might improperly infer both that the statement had been made and that it was true. Since the [s]olicitor was not a witness, the inference from his reading that [the co-defendant] made the statement could not be tested by cross-examination. Similarly, [the co-defendant] could not be cross-examined on a statement imputed to but not admitted by him.[8]

The Court also noted that the opportunity to cross-examine the officers to whom the statement was made was inadequate to remedy the violation of the defendant's rights under the Confrontation Clause.[9]

In *Lingerfelt v. State*,[10] the Supreme Court of Georgia held that the defendant's Sixth Amendment right to confrontation was violated when the prosecutor asked questions of a witness that were premised on a transcript of testimony that the witness had given at a prior commitment hearing and the witness chose to remain silent.[11] The Court commented that the prosecutor could not be allowed to do indirectly what could not be done directly.[12] Similarly, in *Lawrence v. State*,[13] our Supreme Court reversed a conviction where the prosecutor asked the defendant's friend, who was not a co-defendant, leading questions which suggested the guilt of the defendant, and the friend exercised his right to remain silent.[14] The court stated that "the undeniable effect of this prosecutorial procedure was to place before the jury, through the questions asked, the content of [the friend's] statement to the police, and the clear inference that the

---

[7] Id. at 419 (I). Accord *Lingerfelt v. State*, 235 Ga. 139, 140 (218 SE2d 752) (1975).

[8] (Citation omitted.) *Douglas*, supra at 419 (I).

[9] Id. at 419-420 (I).

[10] Supra.

[11] Id. at 139-140.

[12] Id. at 140.

[13] 257 Ga. 423 (360 SE2d 716) (1987).

[14] Id. at 424-425 (3).

defendant had made these incriminating statements to [the friend]."[15]

Even though the evidence at issue in this case did not directly implicate Deloatch in the matter for which he was on trial, the effect is the same; Deloatch's right to confront witnesses against him was violated. The procedure permitted by the court placed before the jury the content of Drake's statement, from which the jury could infer that since Deloatch committed the two armed robberies with Drake, he committed the armed robbery at issue in the instant case. The trial court did instruct the jury that it was not to consider the questions asked by the state or the responses by Drake as evidence in the case. However, as we stated in *Collins v. State*,[16]

> [u]nless [a] statement is otherwise directly admissible against the defendant, the Confrontation Clause is violated by the admission of a nontestifying co-defendant's statement which inculpates the defendant by referring to the defendant's name or existence, *regardless of the existence of limiting instructions*.[17]

Therefore, we find that Deloatch's Sixth Amendment right to confront witnesses against him was violated in this case.

The state argues that the violation was harmless because of the other evidence of Deloatch's guilt, but we do not agree. First, we do not find overwhelming evidence of guilt in this case. Moreover, "[w]hether a constitutional violation constitutes harmless error depends on whether the [s]tate can prove beyond a reasonable doubt that the error did not contribute to the verdict."[18] Here, Drake, who testified wearing prison garb, was the only witness who could connect Deloatch to the two armed robberies of the stores. Thus, the evidence permitted the jury to draw an inference that Deloatch committed these robberies without the state having to prove Deloatch's involvement in the robberies or any other details of the crimes or the defense having an opportunity to rebut the testimony. The state has not proven, and we cannot otherwise conclude, that this error did not contribute to the verdict.

We address appellant's remaining enumerations of error that are likely to recur on retrial.

2. Deloatch challenges the admission of similar transaction

---

[15] Id. at 425 (3).

[16] 242 Ga. App. 450 (529 SE2d 412) (2000).

[17] (Citation omitted; emphasis supplied.) Id. at 451-452 (1).

[18] (Citation and punctuation omitted.) *Lowery v. State*, 282 Ga. 68, 75 (4) (b) (ii) (646 SE2d 67) (2007).

evidence regarding an armed robbery that occurred in Palmetto, arguing that the state did not carry its burden of showing that the armed robbery was admissible as a similar transaction. The admissibility of similar transaction evidence is contingent upon three affirmative showings established in *Williams v. State*.[19]

> First, the [s]tate must demonstrate that the evidence is not brought forth to raise an improper reference to character but, rather, for an appropriate purpose deemed an exception to the general rule prohibiting this type of evidence; second, the [s]tate must show sufficient evidence to establish that the accused committed the independent offense or act; and third, the [s]tate must demonstrate a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter.[20]

On appeal, we review the trial court's decision to admit similar transaction evidence for abuse of discretion, and we will affirm the trial court's finding that two incidents are sufficiently similar unless it is clearly erroneous.[21] We find no abuse of discretion here.

The similar transaction evidence was offered to prove course of conduct, state of mind, and Deloatch's intent, which is an appropriate purpose.[22] As to the second affirmative showing, Deloatch entered a negotiated plea of guilty to possession of a firearm during the commission of a felony in connection with the Palmetto armed robbery. A certified copy of Deloatch's conviction was entered into evidence. Thus, the state satisfied its burden to show that Deloatch committed the independent act.[23] To establish the third showing, that there is a sufficient connection or similarity between the independent offense or act and the crime charged such that proof of the former tends to prove the latter, the state proffered that on the day before the incident in the case sub judice, the victim was robbed while working; that the perpetrator wore khaki pants and had on a black long-sleeve shirt; that the suspect used a handgun; that the suspect took money from the victim; and that the victim identified Deloatch from a photographic lineup.

---

[19] 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

[20] (Citation omitted.) *Dean v. State*, 292 Ga. App. 695, 699 (3) (665 SE2d 406) (2008). See *Lowe v. State*, 245 Ga. App. 659, 660 (2) (538 SE2d 552) (2000).

[21] *Garvin v. State*, 292 Ga. App. 813 (665 SE2d 908) (2008).

[22] See *Kinder v. State*, 284 Ga. 148, 151 (3) (663 SE2d 711) (2008).

[23] See *Milton v. State*, 232 Ga. App. 672, 674 (2) (503 SE2d 566) (1998). Accord *Curtis v. State*, 282 Ga. App. 322, 324 (2) (a) (638 SE2d 773) (2006).

The law does not require that a similar transaction crime be identical to the crime charged. There can be a substantial variation of circumstances where there exists a logical connection between crimes which are essentially dissimilar. . . . When similar transaction evidence is being introduced to prove motive, intent, or bent of mind, it requires a lesser degree of similarity to meet the test of admissibility than when such evidence is being introduced to prove identity.[24]

Here, the evidence sufficiently satisfied the similarity prong of the *Williams* test, and the trial court expressly found that the state had made the required affirmative showings.[25] We note, too, that Deloatch presents no legal analysis explaining why the similar transaction evidence offered was so dissimilar that it should not have been admitted.

3. In his last enumerated error, Deloatch argues the trial court erroneously admitted hearsay and bad character evidence against him. Detective John Cooper testified that in response to the lookout radio call on the night of the incident, he called Investigator Lewis to get a description of the suspect. Cooper was then offered as a similar transaction witness to testify about the investigation of the Palmetto armed robbery. Cooper testified that he talked to the witness at the scene and that based on the witness's description of the suspect, Cooper concluded that Deloatch was a suspect. Cooper also explained that he knew Deloatch from around the city; that he was getting anonymous phone calls from callers who told him that "New York" committed the robbery; and that Deloatch's nickname was "New York." Deloatch objected on the grounds that the reference to anonymous calls injected hearsay and Deloatch's bad character into evidence. The trial court admitted the testimony as an exception to the hearsay rule on the grounds that it pertained to the officer's investigation. However, in *Brown v. State*,[26] the Supreme Court found that it was error to admit evidence of hearsay information provided by an anonymous informant in order to explain police conduct.[27] Earlier in *Teague v. State*,[28] the Court noted that only in "rare instances" would there be a need to explain police conduct, explaining that

---

[24] (Citation omitted.) *Avery v. State*, 244 Ga. App. 177, 178 (1) (534 SE2d 897) (2000).

[25] See *Simpson v. State*, 282 Ga. 508, 510 (2) (651 SE2d 732) (2007) (incidents sufficiently similar where defendant admitted to independent act and used a drawn gun to demand money, even though one offense occurred in a car and the other in a home).

[26] 274 Ga. 31 (549 SE2d 107) (2001).

[27] Id. at 36-37 (2).

[28] 252 Ga. 534 (314 SE2d 910) (1984).

[a]t heart, a criminal prosecution is designed to find the truth of what a defendant did, and, on occasion, of why he did it. It is most unusual that a prosecution will properly concern itself with *why* an investigating officer did something. If the hearsay rule is to remain a part of our law, then OCGA § 24-3-2 . . . must be contained within its proper limit. Otherwise, the repetition of the rote words "to explain conduct" can become imprimatur for the admission of rumor, gossip, and speculation.[29]

Furthermore, even "where an appellate court suggests that the jury may find police behavior so inexplicable as to cast doubt on the prosecution, or where a confidential informant has provided information which initiates an investigation,"[30] hearsay evidence is inadmissible to explain police conduct.[31] Therefore, the trial court erred when it admitted this testimony. In light of our decision regarding the admissibility of Drake's testimony, however, we need not reach the issue of whether the admission of Cooper's testimony to explain his conduct was reversible error.

*Judgment reversed. Smith, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 12, 2009.

*Stacey Flynn*, for appellant.

*Peter J. Skandalakis, District Attorney, Andrea A. Newton, Assistant District Attorney*, for appellee.

---

[29] Id. at 536 (1).

[30] (Citations and footnote omitted.) *Weems v. State*, 269 Ga. 577, 579 (2) (501 SE2d 806) (1998).

[31] *Britton v. State*, 257 Ga. App. 441, 442 (1) (571 SE2d 451) (2002).