## ROUNSAVILLE & BROTHER v. WAGNER.

The evidence being that the plaintiff was to be paid for his services when the work which he was employed to superintend was completed, the testimony for defendants showing that it was com-

pleted in February, 1887, and plaintiff's evidence not showing that
any work was done after that time, except some small additions or
repairs which he did not superintend, and which were made under
a new and distinct contract, the plaintiff's action, filed in April,
1891, was barred by the statute of limitations. *Judgment reversed.*
August 27, 1892.

Contract. Action. Limitation. Before Judge MEYER-
HARDT. City court of Floyd county. September term,
1891.

Wagner sued Rounsaville & Brother on April 23,
1891, on an account dated January 1, 1888, for services
rendered, putting in fire protection in warehouse, $100
principal, and interest for three years. The defendants
pleaded not indebted, and the statute of limitations.
The jury found for the plaintiff $65 with interest from
January 1, 1888. The defendants moved for a new
trial; the motion was overruled, and they excepted.
The grounds of the motion are, that the verdict is con-
trary to law and evidence; that it is unsupported by the
pleadings or the evidence, in that the action was for $100
with interest from January 1, 1888, and all the evidence
was that the services were worthless or worth $100, and
the jury were required, under the pleadings and proof,
to find for the defendants unless they rendered a verdict
for the amount sued for; and that the right of action
was barred by the statute of limitations, more than
four years having elapsed from the date of accrual of
right of action, if any, until the commencement of this
suit.

The plaintiff's testimony was, in brief: He was em-
ployed by defendants to superintend the putting in of
fire protection in their cotton warehouse, in the fall of
1886. It was understood that he was not to do any
manual labor, but was merely to get up plans and super-
intend. The contract was that when the work, the
whole job, was completed, they would pay him what was
right, and if they could not agree on a price, to leave it

to disinterested parties to say what the work was worth. He got up the plans for the first division of the warehouse (there being three divisions, all alike) and gave his personal supervision to the work, visited the warehouse frequently while it was in progress, sat up several nights until midnight, calculating on the plans, amount of pressure and adjustment of pipes, etc. The fire protection in one division was to be duplicated in the other two; after the completion of the first the personal supervision was not necessary in the other two. The work was worth $100, none of which has ever been paid. It was not completed until the fall of 1887; did not know the exact time but thought it was in September; was present and turned the water on when the first division was completed; spoke to Rounsaville several times about pay, but could never get him to any settlement; finally proposed to submit the matter to arbitrators, which Rounsaville refused. Plaintiff employed Spencer & Company to do the work. They began the job but did not complete it, as there was some disagreement about the amount of wages defendants were willing to pay. Plaintiff had nothing whatever to do with the paying of the hands or the actual performance of the work, his duty under the agreement being to get up the plans and see that the fire protection was properly put in. He was a member of the firm of Spencer & Company, plumbers, but his employment by Rounsaville had nothing to do with his connection with that firm; they were employed and paid independently of his employment. After Spencer gave up the job Rounsaville employed McGuire to do the work, who was a practical plumber, as good or better than plaintiff, who still continued to give his supervision to the work, and McGuire carried out his plans, though it was not necessary for plaintiff to give so much attention to the work after the completion of the first room, as the balance was just a duplication of

the first. He was not sure that the job as originally planned had ever been entirely completed, but he was sure that work had been done there as late as September, 1887. He refreshed his memory as to this by an entry made in McGuire's book, showing a charge of $4.00 against defendants for putting sprinklers in warehouse on September 22, 1887, which was a part of this fire protection. At the time of doing this work plaintiff was superintendent of the Rome water-works, and drew a salary as such. Rounsaville knew this, and said he wanted plaintiff to take charge of the job, because he was a practical plumber and had experience with water-works and fire protection. Another witness testified that he worked on the job in question in the fall of 1886, and perhaps as late as January, 1887; plaintiff superintended it when it was first begun, was there frequently and gave direction as to it; witness did not know when it was completed, as he quit before it was done.

Rounsaville testified: Called in plaintiff and stated purpose and plan to him; told him we wanted him to order the pipe for us, and occasionally pass through the warehouse and see that the work was done right; and that we should have the benefits of best discounts given, and he agreed we should have them; knew he was in the employ of the city; told him when he had completed the work, would pay him for his trouble; if we failed to agree, would leave it to other parties. He ordered only part of the pipe, and employed Spencer & Company to do the work of putting it in. When the bills for the pipe came, we found the discounts were not equal to those we could and did get ourselves, and that the hands, especially Spencer, were not doing their duty; and complained to plaintiff of his failure to get us discounts and of the manner in which the hands were working. This was just before dinner-time. In the

afternoon neither Wagner nor his hands came back, nor did they come back after that time. They abandoned the job of their own free will and accord. Afterwards learned that plaintiff was a partner in Spencer & Company, which firm we paid about $132 for what work they did. I never saw any plans. No pipe was put up under plaintiff's superintendence. McGuire ordered two thirds of the pipes and put all the pipe up; plaintiff only had put down ten mains, and connections at the rear of warehouse, for which his firm was fully paid. The putting in of the pipes was completed by McGuire in February, 1887. I think plaintiff asked me to give him $25 over three years after the job was completed, which I refused; this was all he claimed. I employed him to superintend the work. I did not employ Spencer & Company. Plaintiff made no demand for arbitration before he brought suit; he never did make a demand for $100 on me. I did not pay the $25, because I did not consider I owed him anything. The testimony of two other witnesses was: On November 16th and 20th, 1886, defendants paid Spencer & Company amounts aggregating $52, and on December 14, 1886, settled with them in full by paying them $80. Wagner gave up the job in the fall of 1886, and witnesses never saw him at the warehouse any more, after the first compartment was fitted up, except when he came to collect water-rent for the city. McGuire finished the work in February, 1887, and was then paid $109.58 by the defendants, which was the balance due him for fitting and putting up the fire protections. The item of $4.00 in McGuire's book, September 22, 1887, was for payment on some repairs done in the third compartment of warehouse. The water was turned on to test the workings of the sprinklers about February 19, 1887, in first compartment. Wagner was about the warehouse several times when the work was progressing in the first compartment, in

the fall of 1886. The work of putting in the sprinklers in the second and third compartments was done by McGuire. The water in the first compartment was turned on in February, 1887; witness does not remember who turned it on, as the machinery for turning it on was out of sight.

J. BRANHAM and C. A. THORNWELL, for plaintiffs in error.

McHENRY, NUNNALLY & NEEL, *contra.*