A07A1681. FINCHER v. THE STATE.
(656 SE2d 216)

BERNES, Judge.

James Dewitt Fincher appeals from the denial of his motion for new trial following his convictions for involuntary manslaughter and pointing a gun at another. He contends that the trial court erred in declining to charge the jury on accident, criminal negligence, and its duty not to be governed by sympathy or prejudice; in denying his motion for a continuance; and in denying his motion for funds to hire a firearms expert. Finally, Fincher asserts that he received ineffective assistance from his trial counsel. Finding no reversible error, we affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict. *Sherman v. State*, 284 Ga. App. 809 (644 SE2d 901) (2007). So viewed, the evidence reflects that Fincher and the victim were cousins and best friends. Both worked at a shooting range located in Dawson County. On June 15, 2002, after getting off work, they practiced shooting their pistols at the clay plate range. While target shooting, they began discussing the monthly "quick draw" competition held at the range that involved the timed drawing and shooting of firearms. Believing that their guns were out of ammunition, Fincher and the victim started practicing their "quick draw" technique to see who was faster in getting his gun drawn and

fired. In jest, the victim "quick drawed" his gun on Fincher. Fincher then jokingly drew his own gun, cocked it, and pulled the trigger. The gun fired. The victim was struck in the face and died.

Fincher was indicted for involuntary manslaughter and pointing a gun at another. The indictment averred that Fincher committed involuntary manslaughter through the unlawful act of intentionally pointing his gun at the victim. At trial, it was undisputed that Fincher believed his gun was unloaded when he pulled the trigger, that the victim believed the gun was unloaded, and that the bullet from Fincher's gun caused the death of the victim. However, the parties disputed whether Fincher had intentionally pointed his gun at the victim before pulling the trigger.[1]

Relying upon Fincher's own admissions and corroborating expert testimony, the state argued that Fincher had deliberately aimed his gun at the victim. Specifically, an investigator with the Dawson County Sheriff's Office testified that Fincher had admitted that he and the victim had been "doing the quick draw between each other" at a distance of three to five feet, and that he had directly pointed his pistol at the victim and had intentionally pulled the trigger, believing the pistol was empty. To corroborate this version of events, the state presented expert testimony from the medical examiner and a ballistics expert. The state's medical examiner opined that Fincher's gun was fired in a straight trajectory at a distance of between one and three feet from the victim. In turn, the state's ballistics expert opined that the gun was fired at a distance of approximately three to three-and-one-half feet from the victim.

In contrast, Fincher took the stand and denied that he had looked at or aimed his gun at the victim when he fired. According to Fincher, at the time of the incident, the victim was standing to his left side, and Fincher had cocked his gun and fired blindly over his left shoulder without intending to point his gun at the victim. Although the defense did not call its own experts, defense counsel thoroughly cross-examined the state's medical examiner and ballistics expert. During cross-examination, the medical examiner conceded that the wound pattern on the victim was equally consistent with Fincher and the victim not standing face-to-face. Likewise, the ballistics expert conceded that he was unable to offer any opinion as to the position of Fincher and the victim at the time of the shooting.

---

[1] Under Georgia law, "where one who believes a pistol is unloaded *intentionally* points and aims the pistol at another [who also believes the pistol is unloaded] and pulls the trigger, and the pistol unexpectedly fires, causing the death of the person at whom it was pointed, a verdict of involuntary manslaughter in the commission of an unlawful act is authorized." (Emphasis supplied.) *Manzano v. State*, 282 Ga. 557, 558 (2) (651 SE2d 661) (2007).

After hearing the conflicting evidence, the jury found Fincher guilty of both charged offenses. Fincher thereafter moved for a new trial. After conducting a hearing, the trial court denied the motion. This appeal followed.

1. Fincher first contends that the trial court erred in refusing to give his requested jury charge on the theory of accident. He argues that the charge was adjusted to the evidence, since the jury could have found, based on Fincher's testimony, that the shot which killed the victim was not deliberately aimed at him and thus struck him by accident. We discern no error.

> It is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error. The failure to give requested instructions in the exact language requested, where the charge given substantially covers the same principle, is not grounds for reversal.

(Citations and punctuation omitted.) *Parker v. State,* 242 Ga. App. 10, 12 (2) (528 SE2d 530) (2000). See also *McCant v. State,* 234 Ga. App. 433, 435 (2) (506 SE2d 917) (1998).

Here, the trial court instructed the jury that the state was required to prove each and every element of the crimes beyond a reasonable doubt and that "the burden never shifts to the defendant to prove innocence." The court further instructed the jury that "[w]hen a defense is raised by evidence, the burden is on the [s]tate to negate or disprove it beyond a reasonable doubt." The court went on to instruct that a conviction for felony involuntary manslaughter predicated on the unlawful act of pointing a gun at another, and/or a conviction for the misdemeanor offense of pointing a gun at another, required proof that the accused "intentionally point[ed] or aim[ed]" the gun at the victim. The trial court defined and elaborated upon the concept of "intent" for the jury:

> Intent is an essential element of any crime and must be proved by the [s]tate beyond a reasonable doubt. Intent may be shown in many ways, provided you, the jury, believe that it existed from the proven facts before you. Intent may be inferred from the circumstances or by acts and conduct, or it may be, in your discretion, inferred when it is the natural and necessary consequence of an act. Whether or not you draw such an inference is a matter solely within your discretion.

Criminal intent does not mean an intention to violate the law or to violate a penal statute, but means simply to intend to commit the act which is prohibited by statute.

This defendant will not be presumed to have acted with criminal intent, but you may find such intention, or the absence of it, upon a consideration of the words, conduct, demeanor, motive, and other circumstances connected with the act for which he is being prosecuted.

Based on these jury instructions, we conclude that the legal principles covered in Fincher's requested charge were substantially covered by the trial court's instruction. It is clear that the jury was fully informed that it had to find that Fincher acted intentionally, rather than accidentally, in pointing his gun at the victim. Thus, having found Fincher guilty of the charged offenses, the jury must have chosen to disbelieve Fincher's testimony and reject any contention that the shooting was the result of accident. Under these circumstances, the failure to give Fincher's requested charge was not reversible error. *Pennamon v. State*, 248 Ga. 611, 614 (3) (284 SE2d 403) (1981). See also *DeBerry v. State*, 241 Ga. 204, 206-207 (2) (243 SE2d 864) (1978); *Wilkie v. State*, 153 Ga. App. 609, 613 (8) (266 SE2d 289) (1980).[2]

2. Fincher next asserts that the trial court erred in declining to charge the jury on criminal negligence. He contends that his requested charge defining criminal negligence was necessary in order for the jury to understand his requested charge on accident. But, as noted in Division 1, it was not reversible error for the trial court to decline to charge the jury on accident. Thus, it likewise was not reversible error for the trial court to decline to give the requested charge on criminal negligence.

3. Fincher further contends that the trial court erred in declining to charge the jury that its decision should not be governed by sympathy or prejudice. He emphasizes that he made a written request for the trial court to give a cautionary charge to the jury informing them that the law did not permit them to arrive at their verdict based "upon sympathy for any party or prejudice against any party." In Fincher's view, a cautionary charge was necessary because the case involved a tragic accident among family members and an accidental shooting by someone employed by a shooting range.

---

[2] As shown by the trial court's jury charge as set out above, this is not a case where the trial court declined to instruct the jury that the state had the burden of disproving beyond a reasonable doubt a defense raised by the defendant. Compare *Bishop v. State*, 271 Ga. 291, 291-292 (2) (519 SE2d 206) (1999).

We are unpersuaded. The decision over whether to give a cautionary charge to the jurors, informing them that they should not be influenced by sympathy or prejudice in reaching a verdict, "is a matter generally addressed to the sound discretion of the trial judge." *Emory Univ. v. Lee,* 97 Ga. App. 680, 698 (4) (104 SE2d 234) (1958). See also *Duggan v. State,* 225 Ga. App. 291, 295 (3) (483 SE2d 373) (1997). "Cautionary instructions are not favored since in most instances they are productive of confusion and tend to restrict the jury's untrammeled consideration of the case." *Butler v. Kane,* 96 Ga. App. 521, 525 (3) (100 SE2d 598) (1957). "Where nothing in the record indicates that any improper circumstance was injected into the case, and the charge of the court fully and accurately instructed the jury on the issues involved, a new trial will not be granted because of the refusal of the court to give a cautionary request." (Citations and punctuation omitted.) *Beasley v. State,* 198 Ga. App. 418 (401 SE2d 610) (1991).

In the instant case, the trial court fully and accurately instructed the jury on the legal issues involved in deciding whether Fincher was guilty of the charged offenses. And, we have reviewed the trial record and have failed to find any instance where either side made an improper appeal to the sympathy or prejudice of the jury. While there was testimony that Fincher and the victim were close friends and family members, and passing reference to the fact that the victim's family was concerned at one point that the investigation was not being handled properly, we do not believe that this testimony rose to the level of mandating a cautionary instruction. The same is true with respect to testimony that Fincher worked at the shooting range. Accordingly, we conclude that the trial court was not required to give Fincher's requested cautionary charge. Compare *City of Jesup v. Spivey,* 133 Ga. App. 403, 406 (4) (210 SE2d 859) (1974) (in case involving the alleged negligent conveyance of burial lots, trial court erred in failing to give cautionary charge requested by defendant when plaintiff injected evidence that the plaintiff was elderly, in bad health, unable to work, had been a public servant for fifty years, and was "seeking to establish a final burial place").

4. Fincher also maintains that the trial court abused its discretion in denying his motion for a continuance. The relevant procedural facts are as follows. Fincher was arraigned on March 14, 2003. He filed a motion for funds for expert assistance on October 17, 2003 in which he sought funds to hire a firearms expert to evaluate the ballistics evidence. A hearing on the motion was scheduled for December 19, 2003. The case, however, was subsequently placed on the trial calendar for the week of November 10, 2003. Upon receipt of the trial calendar, Fincher moved for a continuance so that a hearing on his motion for funds for expert assistance could be conducted prior to

trial. The trial court denied the motion for continuance, concluding that no hearing on the motion for funds for expert assistance was necessary because that motion was untimely. According to Fincher, the trial court erred in concluding that his motion for funds for expert assistance was untimely and thus abused its discretion in denying his motion for continuance.

We disagree. A defendant is entitled to funds to hire an expert only upon "motion timely made." (Citation and punctuation omitted.) *Thornton v. State*, 255 Ga. 434 (1) (339 SE2d 240) (1986). In 2003, Uniform Superior Court Rule 31.1 provided in part that "[a]ll motions . . . shall be made and filed at or before time of arraignment, unless time therefor is extended by the judge in writing prior to trial." Based on this language, a trial court is afforded wide discretion in deciding whether and how to vary the time for filing motions. See, e.g., *Darden v. State*, 271 Ga. 449, 450 (2) (519 SE2d 921) (1999).

Here, the trial court exercised its discretion and extended the time for filing motions until after arraignment in a written order that stated: "[I]n the event discovery furnished by the [s]tate gives rise to the basis for an appropriate motion which could not have been filed at or prior to arraignment, upon a showing by the Defendant of the reason for the filing of the motion *at the time same is made*, if appropriate, the motion will be heard." (Emphasis supplied.) Therefore, under the trial court's order, any party who filed a motion after Fincher's arraignment was required, as a precondition of having the motion heard, to provide an explanation in the motion or accompanying brief as to why the motion could not have been filed at or prior to arraignment.

Significantly, Fincher's motion for funds for expert assistance — which was filed long after his arraignment — recited no facts and contained no explanation as to why it could not have been filed at or prior to arraignment. As such, Fincher's motion failed to satisfy the requirements of the trial court's extension order that were a precondition to having the motion heard. It follows that the trial court properly concluded that Fincher's motion for funds for expert assistance was untimely and need not be heard, and for that reason declined to grant a continuance to hear the motion.

We also note that a party seeking a continuance must show that he has acted with due diligence. OCGA § 17-8-20. According to Fincher's trial counsel, he was aware that a state firearms expert was involved in the case once he received discovery from the state in June 2003 which included the expert's report on the ballistic evidence. Nevertheless, counsel waited approximately five months before making the request for funds for expert assistance until after plea negotiations had broken down and shortly before the case was placed on the trial calendar. Under these circumstances, Fincher failed to

show that he exercised due diligence and thus failed to demonstrate that he was entitled to a continuance. See *Berry v. State*, 246 Ga. App. 9, 10-11 (2) (b) (539 SE2d 516) (2000).

5. In a separate enumeration of error, Fincher argues that the trial court erred in failing to authorize him to receive state funds for expert assistance. We reject Fincher's argument because, as noted in Division 4, the trial court did not err in concluding that the motion for funds for expert assistance was untimely and did not have to be heard.

6. Lastly, Fincher argues that his trial counsel was ineffective by failing to timely request funds for expert assistance so that he could have a firearms expert testify on his behalf at trial. According to Fincher, a defense expert was needed in order to independently evaluate the reports prepared by the state's medical examiner and ballistics expert for purposes of cross-examination; to determine whether the ballistics evidence supported Fincher's assertion that he did not intentionally point his gun at the victim; and to explain to the jury how the evidence supported Fincher's theory that the shooting was simply a tragic accident.

> In order to prove ineffective assistance, [Fincher] must overcome the strong presumption that defense counsel's conduct falls within the broad range of reasonable professional conduct. He must show not only that his counsel's performance was deficient, but also that this deficiency prejudiced his defense. The test is whether there is a reasonable probability the jury would have reached a different verdict, absent the error of counsel.

(Citations and punctuation omitted.) *Maldonado v. State*, 284 Ga. App. 26, 33 (10) (643 SE2d 316) (2007). Failure to prove either a deficiency by trial counsel or prejudice is fatal to a claim of ineffective assistance. *Wallin v. State*, 285 Ga. App. 377, 381 (646 SE2d 484) (2007).

We conclude that there is no reasonable probability that the outcome of the trial would have been different, even if Fincher's trial counsel was deficient in failing to file a timely motion for funds for expert assistance. As an initial matter, Fincher cannot show that the trial court would have granted his motion even if it had been timely. There is no evidence in the record that the state's medical examiner and ballistics expert were biased or incompetent, and the state's case did not rest entirely on the experts' testimony, but rather was also established by Fincher's own admissions. Given these specific circumstances, it would have been within the trial court's discretion to have denied the motion for funds. See *Patterson v. State*, 239 Ga. 409,

412-413 (3) (238 SE2d 2) (1977); *House v. State,* 170 Ga. App. 53, 54 (2) (316 SE2d 36) (1984).

Furthermore, Fincher's trial counsel elicited a concession from the state's ballistics expert that he was offering no opinion as to the position of the victim and Fincher at the time of the shooting, as well as a concession from the state's medical examiner that the wound pattern of the victim was equally consistent with Fincher's version of events, namely, that he and the victim were not standing face-to-face at the time of the shooting. As such, even without having a defense expert available to testify or assist in the preparation of cross-examination, trial counsel was able to get expert testimony before the jury that supported Fincher's version of events.[3] For this additional reason, Fincher cannot show a reasonable probability that the outcome of trial would have been different, if his trial counsel had obtained funds to hire a firearms expert.

*Judgment affirmed. Blackburn, P. J., and Ruffin, J., concur.*

DECIDED DECEMBER 20, 2007.

*Fox, Chandler, Homans, Hicks & McKinnon, Robert L. Chandler, Cheryl H. Kelley,* for appellant.

*Lee Darragh, District Attorney, Susan A. Beck, Assistant District Attorney,* for appellee.

---

[3] Fincher also maintains that "[w]ithout expert assistance, [he] was effectively required to testify because there was no other way to counter the conclusions of the [s]tate's witnesses or explain his theory of the defense." But, as noted, Fincher's trial counsel countered the conclusions of the state's expert witnesses through sifting cross-examination. Moreover, it is pure speculation to assume that Fincher would have chosen not to testify and explain his theory of the defense if he had been provided funds for an expert.