## A11A2312. FOSTER v. THE STATE.

(725 SE2d 777)

DOYLE, Presiding Judge.

Following a jury trial, Coleman Foster appeals from his conviction for trafficking in cocaine,[1] possessing ecstasy,[2] and obstructing a law enforcement officer.[3] He contends that the trial court erred by (1) expressing an opinion as to what had been proved and (2) admitting hearsay statements made by a confidential informant. For the reasons that follow, we affirm.

Construed in favor of the verdict,[4] the evidence shows that police conducted a controlled drug purchase at a house using a confidential informant wearing a microphone and audio transmitter. Based on the successful controlled transaction, police obtained a search warrant for the house. As a team of officers executed the warrant, several people fled the house, including Foster, who dropped a black bag on the ground as he ran away. The bag contained 105.98 grams of cocaine, 6.29 grams of ecstasy (3, 4-methylenedioxymethamphetamine), and when the pursing officers caught up to Foster, they discovered $6,403 in cash on his person.

Foster was charged with trafficking in cocaine and ecstasy as well as obstruction for fleeing the arresting officers.[5] A jury found him guilty of trafficking in cocaine, possessing ecstasy,[6] and obstruction. After his motion for new trial was denied, Foster filed this appeal.

1. (a) Foster contends that the trial court erred by expressing an opinion on whether certain facts had been proven, which would require reversal under OCGA § 17-8-57: "It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." Foster points to several occasions where the trial court, typically during the tendering of an exhibit, referred to an exhibit as "cocaine" or "ecstasy" as opposed to "alleged cocaine" or "alleged ecstasy":

Court: Now, is this *the ecstasy?* . . .

---

[1] OCGA § 16-13-31 (a) (1).

[2] OCGA § 16-13-30 (a).

[3] OCGA § 16-10-24 (a).

[4] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

[5] Foster was also charged with a firearm offense, but he was not convicted on that count.

[6] Based on the amount of ecstasy, the trial court granted a directed verdict on the trafficking count, but allowed a jury charge on simple possession as a lesser included count. Foster does not challenge that ruling on appeal.

Court: Just so I'll be sure, and the jury don't get confused on this — I'm trying to be consistent because you have numerous charges here. I'm trying to be consistent with your exhibits with the indictment. So Exhibit 1 — this is a question. Exhibit 1 would be *the cocaine* and Count 2 for *the ecstasy* found in the black bag? . . .

Court: One more time just to be clear, we have a safe or lock box . . . in the closet. Inside the lock box or safe is another box. You're calling a cracker box, is that right? . . . When you open the cracker box is *the crack*, whatever it is in — . . .

Court: When you just said cocaine, you're talking about 105 grams of *cocaine*. . . .

Court: Wouldn't it help if you went ahead and dealt with *the ecstasy*, so you would have — your first exhibit has got *the cocaine* and the charge of ecstasy, which, I guess, is Count 2 in the indictment?

Court: I've got six twenty-five [as the value of the ecstasy]. . . .

Court: Can we seal it? We don't want y'all getting your hands on *the cocaine*. . . . I meant that in the opposite direction of what y'all probably thought I said. I didn't want it to go into the pores of your skin is what I meant. So how can we do that?[7]

Foster argues that each of these references amounted to the trial court intimating its opinion that the white powdery substance introduced at trial was actually cocaine and the pills introduced were actually ecstasy. At the outset, we note that the context of the trial court's references shows that they generally were made for the purposes of administering the trial and clarifying which exhibit was associated with which count. At the beginning of trial, the court had asked the State to introduce them in the order of the counts in the indictment, to "keep it consistent for the jury." Therefore, the court's references to the exhibits were an attempt to organize the exhibits with the counts in the indictment or to ensure the integrity of the exhibits during the jury's deliberation, and we do not interpret the comments and questions as statements of the trial court's opinion as to whether the exhibits had been proven to be controlled substances. Under these circumstances, we find no error because "OCGA § 17-8-57 does not prohibit the trial judge from taking such measures as necessary to ensure the orderly administration of the trial, and the court may even propound questions to a witness to

---

[7] (Emphasis supplied in quotations.)

clarify testimony when necessary in order to enforce its duty to ensure a fair trial."[8]

Furthermore, we note that in Foster's opening statement to the jury, his counsel conceded that the State would "be able to prove there was a black bag there[, and t]he black bag *did in fact contain drugs*,"[9] and instead attacked the evidence showing that Foster possessed the contraband. Consistent with this, Foster never challenged the chemical identification of the substances, nor did he cross-examine the State's forensic chemist about the identification of the substances. In sum, there was never any dispute at trial as to the composition of the exhibits.

> While it is true that the trial court may not express an opinion as to what has been proved, where only one inference is possible from the evidence it is not improper for the court to assume the fact to be true. In the trial of a criminal case, even [though] the defendant has not admitted his guilt [and] the question of his guilt or innocence is in issue, where a relevant fact, other than the essential one of guilt or innocence, has been established by uncontradicted evidence, and the defendant in his statement to the jury does not deny such fact but in effect admits it to be true, it is not error for the judge to assume or intimate to the jury that such fact is true.[10]

For these reasons and based on the facts of this case, we do not find an error under OCGA § 17-8-57.[11]

(b) Foster also argues that the trial court violated OCGA § 17-8-57 by re-swearing a witness in the following exchange with the police evidence custodian:

> Court: So you're swearing today that the items packaged and presented in court today are the same items that you received back in March?
> Witness: I do so swear.

---

[8] *Moore v. State*, 301 Ga. App. 220, 223 (1) (687 SE2d 259) (2009).

[9] (Emphasis supplied.)

[10] (Punctuation and footnote omitted.) *Nelson v. State*, 305 Ga. App. 65, 67-68 (3) (699 SE2d 66) (2010).

[11] See *Sauerwein v. State*, 280 Ga. 438, 439-440 (2) (629 SE2d 235) (2006) (stating that "[c]ourts of this State have always recognized . . . that a statement by a trial court concerning a fact that is uncontested or is not in dispute does not constitute a violation of" OCGA § 17-8-57, but also warning trial courts to avoid such remarks "to diligently avoid any appearance of partiality"). Our analysis is based on the evidence and proceedings in this case, but we do not imply that Foster's chosen trial strategy relieved the State of its burden to prove each element of the indicted offenses.

Court: All right.

Based on this exchange, Foster argues that the trial court's re-emphasis of the witness's oath endorsed the credibility of the witness, thereby intimating the trial court's opinion as to the truth of the witness's testimony.

We discern no violation of OCGA § 17-8-57 in the trial court's question. The intent of the question was to clarify the witness's testimony, and, as noted above, "the court may . . . propound questions to a witness to clarify testimony when necessary in order to enforce its duty to ensure a fair trial."[12] In the context of the testimony, the trial court's single, isolated use of the term "swearing" was not impermissible under OCGA § 17-8-57 because it referred to the sworn trial testimony, not the trial court's opinion with regard to the facts at issue.

(c) Foster also argues that the trial court violated OCGA § 17-8-57 in the following colloquy at the end of the State's direct examination of the officer who was the evidence custodian:

Court: All right. Cross-examination?
Defense Counsel: . . . For [the witness], for his benefit, I don't have any questions. I just actually looked at a couple of things before I knew, but I don't have any questions for the [witness].
Court: All right, sir. May he be excused from his subpoena?
. . .
Defense Counsel: The defense has no objection.
State: No objection.
Court: What about the custody? Was there an issue on —
Defense Counsel: Chain of custody? Not with [this witness], Your Honor.
Court: All right. *It sounds good*. Sir, you're released. *We appreciate it very much*. Thank you.[13]
Witness: Thank you, Your Honor.
Court: *Thank you for the job you do*. You're welcome to stay in the courtroom if you would like or you can go back to work or go home or anywhere else you want to go.[14]

Foster argues that the emphasized language above indicated the trial court's agreement with the witness, demonstrating that the

---

[12] *Moore*, 301 Ga. App. at 223 (1).
[13] (Emphasis supplied.)
[14] (Emphasis supplied.)

court thought he testified truthfully. Nevertheless, the general comment that "[i]t sounds good" after Foster's counsel explained why she had no further need for the witness to remain under subpoena was a generalized acknowledgment for purposes of administering the trial. Further, although casual colloquy with witnesses should be minimized in front of the jury, merely thanking a law enforcement witness for his service as a courtesy did not in this case rise to the level of improperly intimating an opinion about the witness's testimony.[15] Therefore, we discern no error.

2. Finally, Foster contends that the trial court erred by overruling his hearsay objection during the following colloquy and instructing the jury as to how the hearsay might be considered:

> State: [D]id you have an occasion to become involved in an investigation of drugs at that location?
> Witness: Yes I did.
> State: Would you explain to the jury how that came about?
> Witness: I had a confidential [informant (CI)] and he is a reliable informant. I have used this person more than ten times in the past. He is a paid informant. He called me and stated that he knew a house that he could purchase crack cocaine from and that the house was a dope house. He didn't think anybody resided at the residence, that it was just —
> Defense Counsel: Your Honor, I'm going to object to the hearsay. This is hearsay testimony that he's repeating, what the CI told him.
> Court: Well, if it was a basis for the search warrant — is this part of the information you gave to the judge to get your search warrant?
> Witness: Yes, sir.
> Court: Then it would be admissible.
> . . .
> State: So let me ask it in this way. So you interviewed the informant?
> Witness: Yes.
> State: The informant provided you some type of information?
> Witness: Yes, sir.
> . . .
> Court (interjecting): Let me instruct the jury on one thing. When an officer gets information from an informant, the

---

[15] In contrast, the trial court excused the jury when the court wished to extend a special appreciation to a different witness who was retiring after a long career in law enforcement.

information is related to that officer. It's not being intro-
duced because it's true. I don't want you to accept it
automatically because the informant said it, that makes it
true. It's not being introduced for that purpose. It's being
introduced to show the actions of the officer and the reasons
for the search warrant, not whether what he said is true or
not.

Contrary to the trial court's explanation, it was error in this case
for the trial court to overrule the hearsay objection to the officer's
testimony as to what the CI told him.

While it is true that hearsay information can in certain
instances provide a basis for a search warrant, the existence
of probable cause for a search warrant is a legal issue for the
court, not the jury. Further, the CI's statements were
inadmissible at trial to explain [the officer's] conduct in
obtaining the search warrant. Only in rare instances will
the conduct of an investigating officer need to be explained.
The State [did] not show[ ] that this is one of those
instances.[16]

In nearly every case, the motive of the police officer will *not* be a
critical issue needing proof at trial.[17]

At heart, a criminal prosecution is designed to find the truth
of what a defendant did, and, on occasion, of why he did it.
It is most unusual that a prosecution will properly concern
itself with *why* an investigating officer did something.
Stated another way, *unless it is the rare instance in which
the conduct of an investigating officer is a matter concerning
which the truth must be found, it is error to permit an
investigating officer to testify, under the guise of explaining
the officer's conduct, to what other persons related to the
officer during the investigation.*[18]

Therefore, even "where an appellate court suggests that the jury
may find police behavior so inexplicable as to cast doubt on the
prosecution, or where a confidential informant has provided infor-
mation which initiates an investigation, hearsay evidence is inadmis-

---

[16] (Punctuation and footnotes omitted.) *Cooper v. State*, 258 Ga. App. 825, 830 (4) (575
SE2d 691) (2002).

[17] See *Weems v. State*, 269 Ga. 577, 578 (2) (501 SE2d 806) (1998).

[18] (Punctuation omitted; later emphasis supplied.) Id. at 578-579 (2).

sible to explain police conduct."[19]

Nevertheless, the error does not demand a reversal if it is highly probable that the hearsay testimony did not contribute to the jury's verdict.[20] Here, the challenged hearsay testimony referred to the house as being a "dope house," where drugs are used and sold, but the testimony did not describe or name Foster, nor was Foster implicated in the CI's controlled drug purchase. Furthermore, the hearsay description of the house was cumulative of other admissible testimony from an officer describing his observations of the house and its contents showing that it was used for processing and selling drugs. Finally, there was eyewitness testimony from an officer who saw Foster discard the black bag containing the cocaine and ecstasy. Therefore, we conclude that it is highly probable that the hearsay testimony did not contribute to the jury's verdict, and the error does not demand a reversal in this case.

*Judgment affirmed. Ellington, C. J., and Miller, J., concur.*

DECIDED MARCH 7, 2012.

*Michael E. Garner, Robert L. Wadkins, Robin H. King*, for appellant.

*J. David Fowler, Gary D. Bergman, Joseph F. Burford*, for appellee.

---

[19] (Punctuation and footnote omitted.) *Deloatch v. State*, 296 Ga. App. 65, 72 (3) (673 SE2d 576) (2009).

[20] See *Weems*, 269 Ga. at 579 (2); *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976).