**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS, P. J. and BOGGS, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 20, 2013**

# In the Court of Appeals of Georgia

A12A2240. HENDERSON v. THE STATE.                    DO-086 C

DOYLE, Presiding Judge.

Following a jury trial, Charles Ralph Henderson was convicted on four counts of sexual exploitation of children in violation of OCGA § 16-12-100 (b) (8). The trial court denied Henderson's subsequent motion for new trial, and he appeals, alleging that (1) the State failed to prove beyond a reasonable doubt his knowledge of the ages of the children depicted in the materials; (2) the failure to list the ages of the children in the indictment constitutes a non-amendable defect; (3) the trial court erred by denying his motion to suppress; (4) the trial court erred by improperly commenting on the evidence; (5) the trial court erred by empaneling a juror that Henderson lawfully struck; (6) trial counsel was ineffective (7) the trial court erred by admitting

similar transaction evidence; and (8) the trial court erred by failing to instruct the jury on his sole defense of accident. We affirm, for the reasons that follow.[1]

"[O]n appeal from a criminal conviction, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility, and the evidence is viewed in the light most favorable to support the verdict, with the defendant no longer benefitting from a presumption of innocence."[2]

So viewed, the evidence shows that the Georgia Bureau of Investigation ("GBI") Internet Crimes Against Children Task Force uses automated programs to identify internet protocol ("IP") addresses of computer users in peer-to-peer networks who are sharing files containing child pornography. In September 2009, the Task Force identified a Rome, Georgia IP address as sharing multiple files of suspected child pornography. GBI Agent Jeffrey Brown obtained a subpoena from Comcast, the

---

[1] We note that the State's brief has been largely unhelpful in addressing Henderson's enumerations. Henderson's brief contains eight separate enumerations and is thirty-one pages; the State's brief is four pages and contains several conclusory arguments lacking any meaningful analysis (i.e., simply that "[t]here was no basis for [Henderson's] [i]neffective [a]ssistance of [c]ounsel claim"). "'We do not believe that this 'argument' satisfactorily discharges the State's duty to file a response brief in all criminal appeals, as required by Court of Appeals Rule 13.'" *Brennan v. State*, 247 Ga. App. 515, n. 1 (544 SE2d 210) (2001).

[2] *Dickerson v. State*, 304 Ga. App. 762, 765 (2) (697 SE2d 874) (2010).

cable provider for the IP address, and the cable provider responded that the IP address was assigned to Henderson. Agent Brown then obtained a search warrant for Henderson's home.[3] During the search, officers found several DVDs in Henderson's bedroom and living room, some of which were labeled "XXX." The GBI also seized Henderson's desk top computer, where subsequent computer analysis revealed numerous movie files depicting images of children engaged in sexual acts with adults, including sodomy and masturbation.

Henderson was arrested and charged with four counts of the sexual exploitation of children. At trial, the jury viewed portions of the movie files and DVDs. Police officers familiar with some of the movie files and the ages of the children contained therein testified that one of the movies depicted a four or five-year-old female, while another depicted a female approximately five to nine years old. A police officer testified that the DVDs found in Henderson's home, some of which contained sexually explicit images of children, had been burned onto the DVDs from a computer using specific software, and Henderson's computer contained DVD burning software.

---

[3] Henderson lived alone.

At trial, Henderson testified that he "didn't try to get" the child pornography, but in fact "punched in on something else," admitting that he "watch[ed] porno, but it wasn't nothing about any young'uns." According to Henderson, when he tried to delete the child pornography, "[i]t would not delete from that page, but it was going somewhere else, because [he] found it later." He admitted that he downloaded some of the images onto DVDs to show to a friend who could help him delete the images from his computer, explaining that the friend "don't believe nothing I tell him unless I show it to him." Henderson testified that he labeled the DVDs as "XXX" to keep them separate from his other DVDs.

The arresting officer testified at trial that Henderson admitted to him that his computer contained images of child pornography, but Henderson insisted he was not aware that such possession was illegal. Henderson also admitted to the officer that he downloaded movie files containing images of child pornography and that he used various search terms, including bestiality, to find the material.

Henderson was convicted on all four counts, and the trial court denied his subsequent motion for new trial. This appeal followed.

4

1. Henderson enumerates that the State failed to prove beyond a reasonable doubt his knowledge of the ages of the children depicted in the movies.[4] This enumeration is without merit.

A person commits the offense of sexual exploitation of children when he "knowingly . . . possess[es] or control[s] any material which depicts a minor or a portion of a minor's body engaged in any sexually explicit conduct."[5] The statute defines a minor as a person under the age of 18 years.[6] "It is axiomatic that the [S]tate bore the burden of establishing each element of this crime, and thus the [S]tate was

---

[4] Henderson also argues in this enumeration that the State failed to prove the "sexually explicit conduct" element of OCGA § 16-12-100 (a) (1). Subsection (a) (1) defines the term minor. We presume that Henderson meant to refer to OCGA § 16-12-100 (a) (4), which defines "sexually explicit conduct" as, inter alia, sexual intercourse, masturbation, and lewd exhibition of the genitals. Henderson cannot, however, "'use [his] brief to expand [his] enumeration of errors by arguing the incorrectness of a trial court ruling not mentioned in the enumeration of the errors.'" *Salinas v. State*, 313 Ga. App. 720, 724, n. 2 (722 SE2d 432) (2012). We therefore decline to address this argument. We nevertheless note that the jury watched the DVDs of the movies and movie files, which contained images of children's genitalia, as well as sodomy, sexual intercourse, and masturbation.

[5] OCGA § 16-12-100 (b) (8).

[6] See OCGA § 16-12-100 (a) (1).

required to prove that the persons depicted in the photographs were under 18 years of age."[7]

The jury viewed DVDs of the movie files found on Henderson's computer and in his home, which depicted small children, who as the trial court concluded, were "clearly prepubescent." Therefore, the jury was authorized to conclude that the children depicted in the movies were under the age of 18.[8]

2. Henderson contends that the trial court erred by denying his motion in arrest of judgment because the indictment was fatally defective and subject to an arrest of judgment because it did not allege that the materials depicted sexually explicit activity by persons under the age of 18. Pretermitting the merit of this argument,[9] Henderson's motion was untimely, and we cannot consider this enumeration.

---

[7] *Abernathy v. State*, 278 Ga. App. 574, 577 (1) (630 SE2d 421) (2006).

[8] See *Day v. State*, 293 Ga. App. 543, 544 (667 SE2d 392) (2008) (holding that the factfinder could deduce that the victim was under 16 years of age "by its observation of her childlike demeanor and prepubescent body in the videotaped interview"); *Abernathy*, 278 Ga. App. at 578 (1) ("where the individual in the photograph is a prepubescent child who is unquestionably under 18 years of age, no expert testimony is necessary").

[9] We note, however, that the indictment specifically alleged that Henderson knowingly possessed materials containing sexually explicit images of minors. See *Berry v. State*, 281 Ga. App. 424, 425 (636 SE2d 150) (2006) ("Knowing that the child is a *minor*, i.e., under age 18, is an element of the crime.") (emphasis supplied).

"A motion in arrest of judgment is a post-trial means by which a defendant may challenge an indictment as one would do in a general demurrer. However, a motion in arrest of judgment must be filed within the term of court in which the judgment was rendered."[10] Here, the verdict was entered on May 17, 2011, and the final disposition was entered on June 29, 2011. Henderson did not file his motion in arrest of judgment until July 14, 2011. The Floyd County terms of court begin on the second Monday in January, March, July, and September, and on the first Monday in May and November.[11] "Accordingly, we cannot address the merit of [Henderson's] motion in arrest of judgment because it was not timely filed."[12]

3. Henderson argues that the trial court erred by denying his motion to suppress because the subpoena offered in support of the search warrant was improper. This enumeration presents no basis for reversal.

---

[10] (Citations and punctuation omitted.) *Swanson v. State*, 309 Ga. App. 381, 382 (708 SE2d 307) (2011).

[11] See OCGA § 15-6-3 (33).

[12] (Punctuation omitted.) *Swanson*, 309 Ga. App. at 382.

7

OCGA § 35-3-4.1 (a) (1) provides that in any investigation involving the sexual exploitation of children "involving the use of a computer or an electronic device,"

> the director, assistant director, or deputy director for investigations shall be authorized to issue a subpoena, with the consent of the Attorney General, to compel the production of electronic communication service or remote communication service records or other information pertaining to a subscriber or customer of such service, exclusive of contents of communications.

Pretermitting whether Henderson has standing to challenge the GBI's subpoena to Comcast, his internet service provider, GBI Agent Brown testified regarding the procedure he employs for securing a subpoena from an internet provider in such a case: Brown drafts the subpoena, including therein the IP address in question, "forwards it to [his] supervisor, who will forward it to the Deputy Director or Assistant Director or Director for approval. From there it goes to the [A]ttorney [G]eneral's office[,] and they send back a confirmation." According to Agent Brown, the consent of the Attorney General's Office in this case was reflected in a letter

signed by an assistant attorney general on September 23, 1999.[13] Thus, the trial court did not err by denying Henderson's motion to suppress (and subsequent motion for new trial) based on an allegedly improper subpoena.

4. During trial, at the conclusion of Agent Brown's direct examination, the trial court reviewed the evidence that had been admitted until that point, noting that one of the exhibits was "[two] DVDs located in the defendant's house in the bedroom," while another exhibit consisted of "[six] DVDs located at the defendant's house in the [living room]." Henderson contends that these statements constituted improper commentary of the evidence prohibited by OCGA § 17-8-57 because possession and knowledge are essential elements of the charged crimes. We disagree.

OCGA § 17-8-57 provides:

It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or

---

[13] Henderson argues that the letter "did not specify 'a subscriber or customer of such service' as is . . . required by law." This argument is unpersuasive given Agent Brown's testimony that the Attorney General's office gave consent for the subpoena in this case. Regardless, Henderson does not provide a citation to the record for the letter, and we have been unable to locate it in the record. Therefore, we cannot consider this argument. "[Henderson] bears the burden of proving error affirmatively by the record. It is not the function of this [C]ourt to cull the record on behalf of a party in search of instances of error." *Wade v. State*, 305 Ga. App. 382, 383 (1) (700 SE2d 827) (2010) (citations and punctuation omitted).

9

has not been proved or as to the guilt of the accused. Should any judge violate this Code section, the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below with such directions as the Supreme Court or Court of Appeals may lawfully give.

In this case, "the context of the trial court's references shows that they generally were made for the purposes of administering the trial and clarifying which exhibit was associated with which [evidence]."[14] Therefore, the trial court's statements were not an expression of the trial court's opinion regarding whether Henderson knowingly possessed materials depicting sexually explicit images of children.[15] "Under these circumstances, we find no error because OCGA § 17-8-57 does not prohibit the trial judge from taking such measures as necessary to ensure the orderly administration of the trial, and the court may even propound questions to a witness to clarify testimony when necessary in order to enforce its duty to ensure a fair trial."[16]

---

[14] *Foster v. State*, 314 Ga. App. 642, 643 (1) (a) (725 SE2d 777) (2012).

[15] See id.

[16] (Punctuation omitted). Id. at 643-644 (1) (a), quoting *Moore v. State*, 301 Ga. App. 220, 223 (1) (687 SE2d 259) (2009).

Furthermore, we note that the fact that the DVDs were located in Henderson's home was not a contested issue, and in fact, Henderson admitted that he possessed the DVDs. Accordingly, this enumeration is without merit.[17]

5. Henderson contends that the trial court erred by empaneling a juror that he lawfully struck following the State's *Batson*[18] claim that he used peremptory strikes to exclude prospective jurors solely based on their gender. We disagree.

"The Equal Protection Clause of the United States Constitution prohibits discrimination in jury selection on the basis of gender as well as race. The three-part test utilized to review claims of race discrimination under *Batson* [] is also applied to analyze gender discrimination claims."[19] Under the test,

> the opponent of a peremptory challenge must make out a prima facie case of discrimination. The proponent of the strike is then required to set forth a gender-neutral, case-related, clear and reasonably specific explanation for the exercise of his strikes. At this point, the proponent of the strike need not proffer an explanation that is persuasive or even plausible – all that is required is an explanation that is facially gender-

---

[17] See *Foster*, 314 Ga. App. at 644 (1) (a).

[18] *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 L2d 69) (1986).

[19] (Footnotes omitted.) *Sheets v. State*, 244 Ga. App. 304 (1) (535 SE2d 312) (2000), citing *J. E. B. v. Alabama*, 511 U. S. 127, 143 (IV) (114 SC 1419, 128 LE2d 89) (1994).

11

neutral. The third step of the process requires the trial court to determine whether, considering the totality of the circumstances, the opponent of the strikes has shown that the proponent was motivated by discriminatory intent in the exercise of his strikes. The opponent of the strikes may carry his burden of persuasion by showing that similarly situated opposite sex jurors were not struck or that the proponent's gender-neutral reason for a strike is so implausible or fantastic that it renders the explanation pretextual.[20]

The trial court's finding on whether the opponent of the strike has met his burden of persuasion is entitled to great deference, and we will the affirm the findings on appeal unless clearly erroneous.[21]

Here, the State challenged Henderson's use of eight of his nine peremptory challenges to strike women. As a result, the trial court found that the State had made a prima facie showing of gender discrimination, and it required Henderson to provide reasons for his strikes. With respect to one of the female jurors, R. H., Henderson's trial counsel explained that "my assistant says that I was supposed to have taken her, and I struck her based on some gut feeling I had. So it didn't have anything to do with

---

[20] (Footnotes and punctuation omitted.) *Sheets*, 244 Ga. App. at 305 (1). See *Toomer v. State*, 292 Ga. 49, 52 (2) (a) (734 SE2d 333) (2012).

[21] See *Toomer*, 292 Ga. at 58 (2) (d).

12

her being a woman, we were supposed to have kept her. It may be a mistake[,] so we don't object to her staying on." The trial court accepted Henderson's gender-neutral explanations for six of his remaining seven peremptory strikes of women.

With regard to the seventh, L. C., trial counsel explained that "I thought I recognized [L. C.] as being a former bailiff here at the [c]ourt. And I struck her because bailiffs see everything and hear everything. But if she's not, I've just made a mistake. But that's still neutral as far as sex is concerned." The Court then asked for the State's response, and the prosecutor conceded that the prospective juror "may have been a bailiff at one point it time," but argued that trial counsel's explanation was not credible. The trial court then upheld the State's challenge as to L. C., and Henderson challenges that ruling on appeal.

We agree that Henderson's explanation of his basis for striking L. C. was facially gender-neutral, and therefore, Henderson satisfied the second prong of the *Batson* analysis.[22] But, "although a trial judge must accept a facially [gender]-neutral explanation *for purposes of determining whether the proponent has satisfied his burden of production at stage two*, this does not mean that the judge is bound to

---

[22] See *Toomer*, 292 Ga. at 54-55 (2) (b); *Sheets*, 244 Ga. App. at 305-306 (1).

*believe* such explanation at stage three."[23] "The trial court observed first-hand . . . [trial counsel's] demeanor as he explained the reasons for the peremptory strikes before finding, at step three of the *Batson* analysis," that the State established discriminatory intent on the part of trial counsel in striking L. C.[24]

> A trial court's determination of a [*Batson*] challenge rests largely on assessing the attorney's credibility and state of mind and therefore lies peculiarly within the province of the trial judge. Accordingly, where, as here, [gender]-neutral reasons are given, the ultimate inquiry for the trial court is not whether counsel's reasons are suspect, or weak, or irrational, but *whether counsel is telling the truth in his or her assertion that the challenge is not [gender]-based.*[25]

Giving great deference to the trial court's ultimate finding and considering the totality of the circumstances, including the number of Henderson's strikes against females, trial counsel's inability to articulate a gender-neutral basis for the strike against R. H.,

---

[23] (Punctuation omitted; emphasis in original.) *Brown v. State*, 307 Ga. App. 797, 800 (1) (706 SE2d 170) (2011).

[24] *Toomer*, 292 Ga. at 57-58 (2) (d).

[25] (Footnote and punctuation omitted; emphasis supplied.) *Brown*, 307 Ga. App. at 800 (1).

and that counsel was unsure about whether L. C. was in fact a bailiff,[26] Henderson has not established clear error in the trial court's finding that the strike was pretextual.[27]

6. Next, Henderson alleges that trial counsel was ineffective.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*.[28] The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable and professional conduct. As the appellate court, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.[29]

---

[26] According to the trial court's order denying Henderson's motion for new trial, trial counsel did not ask L. C. during voir dire whether she had been employed as a bailiff. Because "voir dire was not transcribed, we must assume the trial court's finding was correct." See *Sheets*, 244 Ga. App. at 305 (1).

[27] See *Brown*, 307 Ga. App. at 800-801 (1); *Sheets*, 244 Ga. App. at 305-306 (1).

[28] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984)

[29] (Punctuation omitted.) *Boynton v. State*, 317 Ga. App. 446, 450 (2) (730 SE2d 738) (2012).

(a) Henderson contends that trial counsel was ineffective by failing to object to the trial court's improper comment on the evidence. "As discussed in Division [4] above, the trial judge's comments did not amount to a violation of OCGA § 17-8-57. Thus, there would have been no merit to trial counsel's objection, and failure to raise a nonmeritorious objection does not constitute ineffective assistance of counsel."[30]

(b) Henderson argues that trial counsel was ineffective by failing to object to similar transaction evidence. As discussed in Division 7, infra, the trial court concluded that no similar transaction evidence was admitted at trial, and Henderson has failed to provide a record citation for the admission of such evidence.[31] Thus, this argument provides no basis for reversal.[32]

7. Henderson contends that the trial court erred by permitting the State to introduce similar transaction evidence for which the State failed to provide proper

---

[30] *Smith v. State*, 317 Ga. App. 801, 805-806 (3) (a) (732 SE2d 840) (2012).

[31] Henderson points to testimony regarding one of the children depicted in a movie file and the circumstances regarding the eventual arrest of that child's father, but this testimony does not constitute similar transaction evidence.

[32] See *Watson v. State*, 289 Ga. 39, 46 (12) (d) (709 SE2d 2) (2011) ("Because [the defendant] has not supported his specific contention of ineffective assistance with any evidence of record, and because it is not our job to cull the record on behalf of a party to find error, [the defendant's] contention is without merit.") (citation and punctuation omitted.).

16

notice under Uniform Superior Court Rule 31.3 (B) and without first holding a hearing pursuant to *Williams v. State*.[33]

In the order denying the motion for new trial, the trial court stated that "[t]he [c]ourt is unaware of any similar transaction evidence introduced during the course of the trial. The [c]ourt restricted the evidence to that relevant to the [c]ounts alleged in the indictment." On appeal, Henderson contends that the trial court admitted "evidence of multiple similar transactions over prior objection," but he fails to provide a citation to the record for the admission of any such evidence or to show that he objected thereto."[G]iven his failure to support such claim of error by reference to the record, [Henderson] has abandoned the same on appeal.[34]

8. Finally, Henderson argues that the trial court erred by failing to instruct the jury on the defense of accident. Henderson did not request the charge at trial and did not object to the court's failure to include a charge on accident before the jury began deliberations. Accordingly, pursuant to the Supreme Court of Georgia's "recent

---

[33] 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

[34] *Dryden v. State*, 292 Ga. App. 467, 470 (5) (665 SE2d 341) (2008), reversed on other grounds by *Dryden v. State*, 285 Ga. 281, 284 (676 SE2d 175) (2009). See also Court of Appeals Rule 25 (c) (2) (i) ("In the absence of such reference, [this] Court will not search for or consider such enumeration.").

decision in *State v. Kelly*[35] and OCGA § 17-8-58 (b), we review this enumeration of error only to determine whether the court's failure to include a specific instruction on transferred intent or transferred justification constitutes plain error."[36]

*Kelly* sets forth the four-prong test for determining the existence of plain error in jury instructions:

> First, there must be an error or defect – some sort of deviation from a legal rule – that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error – discretion which ought to be exercised only if the error seriously affects the fairness, integrity[,] or public reputation of judicial proceedings.[37]

---

[35] 290 Ga. 29 (718 SE2d 232) (2011).

[36] *Allen v. State*, 290 Ga. 743, 744-745 (3) (723 SE2d 684) (2012).

[37] (Punctuation and emphasis omitted.) *Kelly*, 290 Ga. at 33 (2) (a), citing and adopting the holding in *Puckett v. U. S.*, 556 U. S. 129, 135 (II) (129 SC 1423, 173 LE2d 266) (2009).

18

Here, pretermitting whether the first, second, or fourth prongs were satisfied, Henderson failed to satisfy the third.

"It is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error."[38] The trial court instructed the jury that the State bore the burden of proving "every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt" and that "the burden of proof never shifts to the defendant to introduce evidence or to prove innocence." The court further instructed that a conviction for the sexual exploitation of children as charged in the indictment required proof that the defendant "knowingly" possessed or controlled material depicting a minor or a portion of a minor's body engaged in any sexually explicit conduct. The trial court also defined the concept of "intent" for the jury:

> Intent is an essential element of any crime and must be proved by the [S]tate beyond a reasonable doubt. Intent may be shown in many ways provided you, the jury, believe that it existed from the proven facts before you. It may be inferred from the proven circumstances or by acts and conduct, or it may be, in your discretion, inferred when it is the natural and necessary consequence of the act. Whether or not you draw

---

[38] (Punctuation omitted.) *Fincher v. State*, 289 Ga. App. 64, 66 (1) (656 SE2d 216) (2007).

such an inference is a matter solely within your discretion. The defendant will not be presumed to have acted with criminal intent, but you may find such intention, or the absence of it, upon a consideration of the words, conduct, demeanor, motive, and other circumstances connected with the act for which the accused is being prosecuted.

Considering the jury charges as a whole, we conclude that the trial court's instruction adequately covered the defense of accident.

It is clear that the jury was fully informed that it had to find that [Henderson] acted intentionally, rather than accidentally, in [possessing or controlling the materials]. Thus, having found [Henderson] guilty of the charged offenses, the jury must have chosen to disbelieve [Henderson's] testimony and reject any contention that [his actions were] the result of accident.[39]

Given the charge as a whole, coupled with Agent Brown's testimony that Henderson installed software on his computer to access a peer-to-peer network and Henderson's admission that he deliberately burned several of the video files to DVDs, Henderson has failed to demonstrate that the trial court's failure to give an

---

[39] Id. at 67 (2).

20

unrequested charge on accident affected the verdict.[40] Accordingly, the trial court did

not err by denying Henderson's motion for new trial on this basis.

*Judgment affirmed. Andrews, P. J. and Boggs, J., concur.*

---

[40] See id; *Grubbs v. State*, 167 Ga. App. 365, 367 (2) (306 SE2d 334) (1983).